**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LARRY MORSE, | ) | |
| THEODORE RAY BUCK, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | No. 22-cv-02740-DWD |
| | ) | |
| KWAME RAOUL, in his official capacity | ) | |
| as the Attorney General of Illinois, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PARTIAL ANSWER AND AFFIRMATIVE DEFENSES

NOW COMES the Defendant, KWAME RAOUL, in his official capacity as the Attorney General of Illinois, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby provides his Answer and Affirmative Defenses to Plaintiff's Amended Complaint [Doc. 8], stating as follows:

Defendant denies all allegations contained in section headings and other portions of the Complaint that are not contained within specifically numbered paragraphs of the Complaint. All allegations, if not expressly admitted, are denied.

## PARTIES

1.   Plaintiff Theodore Ray Buck, Jr. is a natural person and a citizen of the United States and of the State of Illinois and resides in Jefferson County, Illinois.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

2.   Plaintiff Larry Morse is a natural person and a citizen of the United States and of the State of Illinois and resides in Williamson County, Illinois.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the

allegations in this paragraph.

3.      Defendant Kwame Raoul is sued in his official capacity as the Attorney General of Illinois. As Attorney General, he is responsible for enforcing the State's laws, *see* 15 ILCS 205/4 (requiring that Attorney General "institute and prosecute all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer"), which include the State's suppressor ban.

**ANSWER**: Defendant admits Defendant Raoul is sued in his official capacity as the Attorney General of Illinois, that he has power to enforce certain laws of the State of Illinois, and that Plaintiffs have accurately quoted a portion of 15 ILCS 205/4. Defendant denies the remaining allegations in this paragraph.

4.      Defendant Theodore Hampson is sued in his official capacity as State's Attorney for Williamson County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the suppressor ban. Defendant Hampson's ongoing enforcement of the ban against Williamson County residents places Plaintiff Morse under imminent threat of arrest and prosecution should he violate the suppressor ban.

**ANSWER**: Defendant admits Defendant Hampson is sued in his official capacity. Defendant admits that powers and duties of the State's Attorneys are set forth in 55 ILCS 5/3-9005, but denies that Plaintiffs have accurately quoted section 3-9005. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

5.      Defendant Sean Featherstun is sued in his official capacity as State's Attorney for Jefferson County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all

actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the suppressor ban. Defendant Featherstun's ongoing enforcement of the suppressor ban against Jefferson County residents places Plaintiff Buck under imminent threat of arrest and prosecution should he violate the suppressor ban.

**ANSWER**: Defendant admits Defendant Featherston is sued in his official capacity. Defendant admits that powers and duties of the State's Attorneys are set forth in 55 ILCS 5/3-9005, but denies that Plaintiffs have accurately quoted section 3-9005. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988.

**ANSWER**: Defendant admits subject matter jurisdiction is proper under 28 U.S.C. §§ 1331. Defendant denies the remaining allegations in this paragraph.

7.      Venue lies in this Court pursuant to 28 U.S.C. § 1391.

**ANSWER**: Defendant admits the allegations in this paragraph.

## STATEMENT OF FACTS

### a.   The Second Amendment

8.      The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

**ANSWER**: Defendant admits the allegations in this paragraph.

9.      The Second Amendment guarantees individuals a fundamental right to keep and

carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 411 (2016); *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

**ANSWER**: Defendant denies the allegations in this paragraph.

10.     Arms are "'weapons of offence, or armour of defence.' 1 Dictionary of the English Language 107 (4th ed.)" They are anything that a man [or woman] wears for his defense, or takes into his hands, or uses in wrath to cast at or strike another.' 1 A New and Complete Law Dictionary (1771)." *District of Columbia v. Heller*, 554 U.S. at 581.

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

11.     The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding. *Heller,* 554 U.S. at 582; *Caetano*, slip op. at 1 (per curiam). *See also Bruen*, at 2132 ("even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense.").

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument.

The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

12.      In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court established a test, centered around text, history, and tradition, for addressing Second Amendment challenges: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2129-2130.

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several"[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

13.      "The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. Therefore, *Bruen* overturned the two-step test the circuit court had adopted. "Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, at 2127.

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS

104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several "[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

14.     A recent case in the Northern District of Texas, applying *Bruen*, held that 18-20 year-olds have a right to carry firearms outside the home. *See Firearms Policy Coal., Inc. v. McCraw*, No. 4:21-cv-1245-P, 2022 U.S. Dist. LEXIS 152834 (N.D. Tex. Aug. 25, 2022). *See also Rocky Mountain Gun Owners, et al. v. The Town of Superior* (Civil Action No. 22-cv-01685-RM, July 22, 2022) (applying *Bruen*, granting TRO, and holding that the burden is on government to justify ban on assault weapons and large capacity magazines). *See also United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 U.S. Dist. LEXIS 168329 (W.D. Tex. Sep. 19, 2022) (striking 18 U.S.C. § 922(n) by applying *Bruen*). See also *United States v. Price*, No. 2:22-cr-00097, 2022 U.S. Dist. LEXIS 186571 (S.D. W. Va. Oct. 12, 2022) (striking 18 U.S.C. § 922(k) as unconstitutional). See also *United States v. Perez-Gallan*, No. PE:22-CR-00427-DC, 2022 U.S. Dist. LEXIS 204758 (W.D. Tex. Nov. 10, 2022) (striking 18 U.S.C. § 922(g)(8) as unconstitutional). *See also Antonyuk v. Hochul*, No. 1:22-CV-0986 (GTS/CFH), 2022 U.S. Dist. LEXIS 182965 (N.D.N.Y. Oct. 6, 2022) (granting in part a temporary restraining order against a number of defendants ability to enforce several New York State firearm laws.)

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several "[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included

a legal brief in his complaint. That is wholly inappropriate.").

15.     Under the Second Amendment, the Defendants retains [sic] the ability presumptively to regulate the manner of carrying arms and may prohibit certain arms in narrowly defined sensitive places, prohibit the carrying of arms that are not within the scope of Second Amendment's [sic] protection such as "dangerous and unusual" arms, and disqualify specific, particularly dangerous individuals from carrying arms. *See Heller,* 554 U.S. at 627.

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

16.     The phrase dangerous and unusual weapons historically refers to time, place and manner restrictions on arms. *See* Page, Daniel Richard, Dangerous and Unusual Misdirection: A Look at the Common Law Tradition of Prohibiting Going Armed with Dangerous and Unusual Weapons to the Terror of the People, as Cited in District of Columbia versus Heller (May 4, 2011). Available at SSRN: https://ssrn.com/abstract=1859395. or http://dx.doi.org/10.2139/ssrn.1859395

**ANSWER:** Defendant denies the allegations in this paragraph.

17.     Therefore, a suppressor is not dangerous and unusual and the mere ownership of a suppressor does not implicate the tradition of prohibiting the carrying of dangerous and unusual weapons.

**ANSWER**: Defendant denies the allegations in this paragraph.

18.     Given the decision in *Heller*, Defendants may not completely ban the keeping and

bearing of arms for self-defense that are typically possessed for lawful purposes, deny individuals the right to carry arms in non-sensitive places, deprive individuals of the right to keep or carry arms in an arbitrary and capricious manner, or impose regulations on the right to keep and carry arms that are inconsistent with the Second Amendment. *See Caetano v. Massachusetts*, 577 U.S. 411 (2016); *Heller v. District of Columbia,* 801 F.3d 264 (D.C. Cir. 2015); *Palmer v. District of Columbia,* 59 F.Supp.3d 173 (2014).

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

19. As detailed further below, both Plaintiffs have standing to challenge Illinois' ban on suppressors. *See Ezell v. City of Chicago*, 651 F.3d 684, 695-96 (7th Cir. 2011) (explaining in dicta that plaintiffs' injuries "easily support[ed] Article III standing" where plaintiffs challenging the Ordinance's provisions relating to firing ranges alleged that they owned firearms and wanted to maintain their proficiency, and traveled outside of the City to complete the range training necessary to apply for a permit to legalize their firearm possession in the City). *See also Second Amendment Arms v. City of Chi.*, 135 F. Supp. 3d 743, 751 (N.D. Ill. 2015) ("Second Amendment Arms surely has many would-be customers who reside in Chicago who would have standing to sue in their own right."); *See also Ill. Ass'n of Firearms Retailers v. City of Chi.*, 961 F. Supp. 2d 928 (N.D. Ill. 2014) (allowing lawsuit to proceed based on desire to purchase prohibited firearms); *See also Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 967 (9th Cir. 2014) ("[T]he injury Jackson

alleges is not the inconvenience of leaving San Francisco; rather, she alleges that the Second Amendment provides her with a "legally protected interest," *id.*, to purchase hollow-point ammunition, and that but for section 613.10(g), she would do so within San Francisco. […] Accordingly, section 613.10(g) constitutes an injury in fact to Jackson, and she has standing to challenge it.").

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

### b. Suppressors

20.    Suppressors are "firearms" within the context of the Second Amendment, and thus receive Second Amendment protection. As such, an outright ban on the possession of a suppressor violates the Second Amendment.

**ANSWER**: Defendant denies the allegations in this paragraph.

21.    Suppressors are regulated under the National Firearms Act ("NFA") and defined as a "firearm." See 26 U.S.C. § 5845(7). The Gun Control Act ("GCA"), 18 U.S.C. § 921(a)(3), also independently defines silencer (which is commonly referred to as a suppressor) as a "firearm." It defines "firearm" as:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as

improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

22.     Individuals who wish to purchase suppressors or other NFA regulated items are required by federal law to file an application with the Bureau of Alcohol, Tobacco, Firearms and Explosives, who will then approve or deny the application for transfer of the NFA item. *See* 26 U.S.C. § 5812.

**ANSWER**: Defendant admits the allegations in this paragraph.

23.     Suppressors are arms in common use for self-defense by civilians as well as by law enforcement.

**ANSWER**: Defendant denies the allegations in this paragraph.

24.     Suppressors are legal for ordinary individuals to own, possess, and use for lawful purposes, including self-defense, hunting, and target practice, in a supermajority of states (42).

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

25.     Likewise, there are no historical analogues banning suppressors, and suppressors were not regulated at the federal level until the enactment of the National Firearms Act, which did not ban them, but instead subjected them to a tax, background, and registration scheme.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

26.     In 1803, Meriwether Lewis, of Lewis and Clark fame, carried an air gun, reputed

to fire 22 rounds per minute, and 40 rounds from one "load" of compressed air, so noticeably quieter than the powder fueled contemporaries, that an air gun was used in an original Sherlock Holmes book as a plot device due to its relatively quiet operation.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

27.     In *Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 331, 670 F.3d 1244, 1261 (2011) the D.C. Court of Appeals evaluated the District Court of Columbia's ban on magazines which hold more than ten rounds and assault weapons. The Court found that both were "arms." Then, it found that in order to determine whether they received Second Amendment protection, the Court had to determine whether they were "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 399 U.S. App. D.C. 314 at 330.

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

28.     It then found that both the prohibited magazines and assault weapons are in common use. In the case of AR-15s, the Court found that they were in common use because "1.6 million AR-15s alone have been manufactured since 1986." *Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 331, 670 F.3d 1244, 1261 (2011). In the same way that magazines are arms, so are suppressors. *See also Hollis v. Lynch*, 827 F.3d 436, 449 (5th Cir. 2016) ("... two justices suggested that the 200,000 absolute number, plus that 45 states have 'accepted [stun guns] as a

legitimate means of self-defense,' was enough to determine that the stun gun is in common use.").

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

29.     In *United States v. Miller*, 307 U.S. 174 (1939), the Supreme Court recognized that the "Arms" the people had the right to keep and bear were not strictly limited to firearms but included "ordinary military equipment" such as ammunition, bayonets and iron ramrods fitted on the firearm's barrel, and other "proper accoutrements." 307 U.S. at 180-82. Although modern suppressors of the sort at issue here were invented long after the Second Amendment was ratified, the Amendment "'extends . . . to . . . arms . . . that were not in existence at the time of the founding.'" *Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027, 1027 (2016) (quoting *Heller*, 554 U.S. at 582).

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

30.     As of 2020 [FN2 There are likely a much larger number, however, recent statistics are not available.], there were 2,042,719 suppressors owned by law abiding citizens as registered

in the National Firearms Registration and Transfer Record ("NFRTR"), far more than was needed for the DC Circuit to find AR-15s in common use. And that is despite legal impediments to owning a silencer, including the National Firearms Act requirements—paying a $200 transfer tax, submitting a detailed application and fingerprints, and a multi months-long wait for the federal government to process the application. *See* 26 U.S.C. § 5811. Even arms that are far less common have been found to be protected.

> **ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

31.     In *Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027, 1032-33 (2016), Justice Alito stated the following in his concurring opinion:

> The more relevant statistic is that '[h]undreds of thousands of Tasers and stun guns have been sold to private citizens,' who it appears may lawfully possess them in 45 States. *People v. Yanna*, 297 Mich. App. 137, 144, 824 N. W. 2d 241, 245 (2012) (holding Michigan stun gun ban unconstitutional); see Volokh, Nonlethal Self-Defense, (Almost Entirely) Nonlethal Weapons, and the Rights To Keep and Bear Arms and Defend Life, 62 Stan. L. Rev. 199, 244 (2009) (citing stun gun bans in seven States); Wis. Stat. §941.295 (Supp. 2015) (amended Wisconsin law permitting stun gun possession); see also Brief in Opposition 11 (acknowledging that 'approximately 200,000 civilians owned stun guns' as of 2009).

> **ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

32.     The Southern District of New York found nunchucks to be protected arms despite the Plaintiffs only being able to prove "64,890 nunchakus" in civilian hands. *Maloney v. Singas*, 351 F. Supp. 3d 222, 237-38 (E.D.N.Y. 2018). A federal court even struck down a ban on flash

suppressors, holding that such a ban violates the Second Amendment. *Murphy v. Guerrero*, No. 1:14-CV-00026, 2016 U.S. Dist. LEXIS 135684, *88 (D. N. Mar. I. Sep. 28, 2016) (unpublished). The court understood flash suppressors to be much like suppressors—an attachment to the front barrel "which attaches to the front barrel of the rifle [and] reduces noise and potentially increases accuracy." *Murphy*, at *65.

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

33.     Suppressors are also typically used for lawful purposes and are "very rarely used in criminal shootings." Suppressors do not completely silence firearms or enable criminals using firearms to go undetected when they would otherwise be heard. See Nathan Rott, Debate Over Silencers:       Hearing       Protection       or       Public       Safety       Threat?, http://www.npr.org/2017/03/21/520953793/debate-over-silencers-hearing-protection-or-public-safety-threat (comparing the sound of four different firearms with and without a silencer); see also, David   Kopel,   The   Hearing   Protection   Act   and   'silencers',   Washington   Post, https://www.washingtonpost.com/news/volokh-conspiracy/wp/2017/06/19/the-hearing-protection-act-and-silencers/.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

34.     And the primary purpose of suppressors are for lawful purposes, including hunting,

which *Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 331, 670 F.3d 1244, 1261 (2011) holds is part of the Second Amendment right, self-defense (the core right pursuant to *District of Columbia v. Heller*, 554 U.S. 570, 628, 128 S. Ct. 2783, 2817 (2008)) and target shooting which both the Seventh and Third Circuits have already found to be protected Second Amendment conduct. The right to self-defense "implies a corresponding right to acquire and maintain proficiency" with common weapons. *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) [hereinafter *Ezell I*].

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

35.     A right to bear those weapons, after all, "wouldn't mean much without the training and practice that make [them] effective.'" *Drummond v. Robinson Twp*., No. 20-1722, 2021 U.S. App. LEXIS 24511, at *12-13 (3d Cir. Aug. 17, 2021) *See also Ezell I*, at 704. *See also Greenlee, Joseph, The Right to Train: A Pillar of the Second Amendment* (April 21, 2022). William & Mary Bill of Rights Journal, Vol. 31, 2022 (Forthcoming), Available at SSRN: https://ssrn.com/abstract=4089974 or http://dx.doi.org/10.2139/ssrn.4089974.

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth

the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

36.    Alternatively, suppressors are protected by the Second Amendment because they are protected firearm accessories.

**ANSWER**: Defendant denies the allegations in this paragraph.

37.    In *United States v. Miller*, 307 U.S. 174 (1939), the Supreme Court recognized that the Second Amendment secures the people a right not only to arms but also to accessories and "proper accoutrements." *Id*. at 180-82.

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

38.    Other circuits have found that the Second Amendment applies to items such as accessories that are used with arms. *See e.g. Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (hollow-point ammunition); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 253-55 (2d Cir. 2015) (firearm magazines); *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("*Heller II*") (same); *Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) (same).

**ANSWER:** Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument.

The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

39.     In *Friedman v. City of Highland Park*, 784 F.3d 406, 410 (7th Cir. 2015), the 7th Circuit reviewed a ban on assault rifles and magazines which hold more than ten rounds.

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

40.     The 7th Circuit applied the same test to both magazines and assault rifles to determine whether they are protected by the Second Amendment. *Friedman v. City of Highland Park*, 784 F.3d 406, 410 (7th Cir. 2015). *See also Wilson v. Cook Cty.*, 937 F.3d 1028, 1029 (7th Cir. 2019) (applying the same test to a virtually identical law).

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

41.     Thus, the 7th Circuit has found that firearm accessories like magazines and suppressors may be protected by the Second Amendment and the test to determine whether they

are protected is the same test which applies to arms.

**ANSWER:** Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.")\

42.     While *Friedman* has been called into question by *Bruen*, this Court should still similarly find that firearm accessories such as magazines and suppressors are protected by the Second Amendment utilizing the same test that applies to arms.

**ANSWER**:  Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

43.     For the reasons provided, whether viewed as arms or accessories, suppressors are protected by the Second Amendment because they are in common use for lawful purposes.

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint.

That is wholly inappropriate.").

44.     Hearing loss is a risk when training at a range due to the noise emitted by gunfire. *See City and County of Denver v. Moore*, 504 P. 2d 367, 369 - Colo: Court of Appeals, 2nd Div. (1972) ("loss of hearing is the result of repeated monthly exposures at the firing range ... acoustic trauma which caused the injury was a result of exposure at the firing range once a month").

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

45.     The American Speech-Language Hearing Association warns that "[e]xposure to noise greater than 140 dB can permanently damage hearing," and that "[a]lmost all firearms create noise that is over the 140-dB level." Michael Stewart, Recreational Firearm Noise Exposure, http://www.asha.org/public/hearing/Recreational-Firearm-Noise-Exposure/. As a result, people "can suffer a severe hearing loss with as little as one shot, if the conditions are right." *Id*. Other experts agree. Jay M. Bhatt, et al., Epidemiology of Firearm and Other Noise Exposures in the United States, The Laryngoscope at 5, available at http://onlinelibrary.wiley.com/doi/10.1002/lary.26540/epdf.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

46.     Hearing loss from even limited firearm use is a regular occurrence, "especially during hunting season when hunters and bystanders may be exposed to rapid fire from big-bore rifles, shotguns, or pistols." Stewart, Recreational Firearm Noise Exposure. Even a ".22-caliber rifle can produce noise around 140 dB, while big-bore rifles and pistols can produce sound over 175 dB." *Id*. And firing guns at an indoor firing range, "where sounds can reverberate, or bounce off walls and other structures, can make noises louder and increase the risk of hearing loss." *Id*.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegation in this paragraph.

47. Earplugs can be uncomfortable. It is reported that twenty percent of firearms users never use hearing protection. Bhatt, at 5. And "[h]unters are even less likely to wear hearing protection because they say they cannot hear approaching game or other noises." Stewart, Recreational Firearm Noise Exposure.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

48. Suppressors offer valuable benefits related to self-defense. Suppressors improve accuracy by reducing recoil and also reduce hearing loss and disorientation after firing, which could give a victim critical additional time to defend against an attack. *See* A.J. Peterman, Second Amendment Decision Rules, Non-Lethal Weapons, and Self-Defense, 97 Marq. L. Rev. 853, 892 n.221 (2014). During a self-defense situation, firing a firearm inside a home can deafen the shooter. A suppressor allows for a homeowner to maintain his or her senses (and his or her hearing) while defending him- or herself.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

49. There is a universal understanding that ""[e]xposure to noise greater than 140 dB [decibels] can permanently damage hearing,' according to Dr. Michael Stewart, Professor of Audiology at Central Michigan University. 'Almost all firearms create noise that is over the 140-dB level.'" Stephen P. Halbrook, Firearm Sound Moderators: Issues of Criminalization and the Second. Amendment, 46 Cumb. L. Rev. 33 (2015) at *1. "The National Institute for Occupational Safety and Health recommends that "hunters and shooters use double hearing protection every

time a weapon is fired. Double protection involves wearing both earplugs and earmuffs." *Id*.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

50.    But even the use of a single device makes it hard for a hunter to hear wildlife, and may inhibit one's ability to hear range commands, which can cause accidents." *Id* at *2. "A Finnish study on use of suppressors at rifle ranges showed that "[a]ll rifle suppressors reduced the shooter's exposure from the original $160 \pm 3$ decibels to below the EU risk limit 140 dB," and that "[i]f noise level decreases by 6 dB, distance to the neighbor can be halved."" *Id*. at *3 f.n, 17.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

51.    Suppressors are owned both here and all around the world for self-defense, hunting and target shooting. *See Id*. at *44-*46 (listing the legality of suppressors use in many European countries). Here, all suppressors possessed under the NFA are for lawful use by law abiding citizens.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

52.    In order to own a suppressor under the NFA, one has to register with the government, obtain permission of law enforcement, submit fingerprints, and pay a $200 tax.

**ANSWER**: Defendant admits the allegations in this paragraph.

53.    Target practice is why the first suppressor was designed. "The Maxim Silencer was developed to meet my personal desire to enjoy target practice without creating a disturbance," wrote Hiram Percy Maxim, inventor of the first successful firearm noise suppressor. *Id*. Given the number of states that allow civilian ownership of suppressors and that allow for hunting while

using suppressors, it "indicates a broad recognition of legitimate uses of suppressors not only to protect one's hearing, but also for such purposes as reduction of loud noise that may disturb others or spook game." *Id* at *3. (Footnotes omitted). ""The situations where a group of hunted animals react by fleeing to the sound of a firearm being discharged is so universal to be axiomatic."" *Id* at *3 fn 18.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

54.     Suppressors assist in this protected activity by reducing the decibels emitted by a firearm down to levels which do not hurt the ear. Similarly, suppressors assist in hunting by protecting hearing and by dampening the report of a firearm so that game are not scared away. These are the primary purposes of suppressors; therefore their typical use is for lawful purposes and they receive Second Amendment protection.

**ANSWER**: Defendant denies suppressors are protected by the Second Amendment. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

55.     In 2017, Ronald Turk, the Associate Deputy Director (Chief Operating Officer) of the ATF drafted a white paper that discussed various firearms-related issues. [FN3 https://s3.documentcloud.org/documents/3454608/Read-the-white-paper-on-firearms-regulations.pdf.]

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

56.     Mr. Turk's white paper discussed suppressors specifically, stating that "[i]n the past several years, opinions about silencers have changed across the United States. Their use to reduce

noise at shooting ranges and applications within the sporting and hunting industry are now well recognized." *Id*. at 6.

> **ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

57.     Mr. Turk further stated that "silencers are very rarely used in criminal shootings.

Given the lack of criminality associated with silencers, it is reasonable to conclude that they should not be viewed as a threat to public safety necessitating NFA classification, and should be considered for reclassification under the [Gun Control Act]." *Id*.

> **ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

### c.   State of Illinois Law.

58.     Illinois bans "a device or attachment of any kind designed, used or intended for use in silencing the report of any firearm[.]" *See* 720 ILCS 5/24-1(a)(6).

> **ANSWER**: Defendant admits 720 ILCS 5/24-1(a)(6) provides, "A person commits the offense of unlawful use of weapons when he knowingly . . . [p]ossesses any device or attachment of any kind designed, used or intended for use in silencing the report of any firearm[.]"

59.     As such, Illinois has a complete ban on the purchase, possession, hunting, self-defense usage, or any other type of usage of a suppressor in Illinois for an average, law-abiding Illinois citizen. Illinois' ban on suppressors lacks a plainly legitimate sweep.

> **ANSWER**: Defendant denies the allegations in this paragraph.

60.     Illinois actively enforces this ban. *See eg. People v. Williams*, 2021 IL App (1st) 181964-U, ¶ 4 ("In December 2016, defendant was charged by indictment with five counts of UUWF (720 ILCS 5/24-1.1(a) (West 2016)), based on his possession of a […](count X) of UUWF

based upon possession of a device "used or intended for used in silencing the report of any firearm, to wit: a black flash suppressor.""); *See People v. Lydon*, 2015 IL App (1st) 143478-U, ¶ 16 (" Defendant does not deny that these four guns and the silencer were seized at his apartment and are among the items he now wishes to be returned,"); *People v. Davis*, 86 Ill. App. 3d 557, 558, 41 Ill. Dec. 611, 613, 407 N.E.2d 1109, 1111 (1980) ("The detectives then conducted a pat-down of Black and the defendant. Poss opened the case and found an automatic pistol and a silencer inside. Poss then placed defendant under arrest."). "Following a jury trial, defendant, Mark Pearson was convicted of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56-1/2, par. 1401 (now 720 ILCS 570/401 (West 1992))) and two counts of unlawful use of a weapon (Ill. Rev. Stat. 1989, ch. 38, par. 24-1 (now 720 ILCS 5/24-1 (West 1992))) [for possession of two suppressors]." *People v. Pearson*, 271 Ill. App. 3d 640, 640, 208 Ill. Dec. 102, 103, 648 N.E.2d 1024, 1025 (1995).

**ANSWER**: Defendant moves to strike this paragraph under Fed. R. Civ. P. 12(f) as improper legal argument. *See Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at \*5-6 (N.D. Ill. June 13, 2022) ("[P]laintiff has included several pages of legal argument. The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate.").

61.    Possession of a suppressor in Illinois is a felony. "[A] person convicted of a violation of subsection 24-1(a)(6) or 24-1(a)(7)(ii) or (iii) commits a Class 3 felony." 720 Ill. Comp. Stat. Ann. 5/24-1 (LexisNexis, Lexis Advance through P.A. 102-1102, of the 2022 Regular Session of the 102nd Legislature).

**ANSWER**: Defendant admits 720 ILCS 5/24-1(b) provides in part that "a person convicted

of a violation of subsection 24-1(a)(6) or 24-1(a)(7)(ii) or (iii) commits a Class 3 felony." Defendant denies the remaining allegations in this paragraph.

### d. Plaintiff Theodore Ray Buck, Jr.

62.     Plaintiff Theodore Ray Buck, Jr. ("Buck") desires to purchase a suppressor for self-defense and other lawful purposes in the state of Illinois.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

63.     Plaintiff Buck has a Federal Firearm License ("FFL") in Illinois and is not a prohibited person. If Illinois allowed him to purchase and own a suppressor, he would apply to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for permission to own a suppressor, including paying the $200 transfer tax and subjecting himself to an invasive and lengthy background process.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

64.     But for Illinois law, Plaintiff Buck would be legally allowed to own a suppressor under federal law. Therefore, his desire to own a suppressor is redressable by this Court.

**ANSWER**: Defendant denies Plaintiff's asserted desire to own a suppressor is redressable by this Court. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

65.     But because Illinois bans suppressors for Buck to own and possess, he cannot apply for one, as the ATF cannot, by law, approve his transfer if it would place him in violation of any other law. *See* 26 U.S.C. § 5812(a) ("Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law."). As such, it is futile for

him to even apply to the ATF.

**ANSWER**: Defendant admits Plaintiffs have accurately quoted 26 U.S.C. § 5812(a). Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph.

66.    But for Illinois law banning suppressors for citizens like him, he would purchase and possess a suppressor and use it for all lawful purposes, including shooting suppressed firearms at the target range because unsuppressed firearms are very loud.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

67.    In fact, Plaintiff Buck lives in the County and has used his land during target practice. Plaintiff Buck has been visited by the police for target shooting on his property, solely due to the noise from his target shooting. If he were able, Buck would target shoot with suppressed firearms, thus reducing the noise associated with target shooting on his own land and would not have to be weary of police showing up at his land due to noise complaints from neighbors.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

68.    Plaintiff Buck would also keep a suppressed firearm in his home, so that if he were ever required to use it indoors, he would not damage his hearing and would likely not have enough time to put ear protection on before he would have to use his firearm in self-defense at home.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

69.    But for Illinois' law, Plaintiff Buck would acquire and possess and use suppressors. *See* Verification of Buck, Exhibit "1."

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

     **e.   Plaintiff Larry Morse.**

70.     Plaintiff Larry Morse ("Morse") desires to purchase a suppressor for self-defense and other lawful purposes in the state of Illinois. Plaintiff Morse is an honorably discharged Army veteran.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

71.     Morse has suffered hearing loss from his time in the Army, as when he served in the late 1960's, he was not always given proper hearing protection.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

72.     Due to his hearing loss, he intends to preserve the remainder of his hearing by doing all things possible to reduce the impact on his hearing from shooting firearms. As such, Morse wanted to purchase a suppressor, but Illinois makes it illegal to possess a suppressor for him.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

73.     Morse is also a firearms instructor and being able to shoot suppressed firearms during training would assist him in his training classes as it reduces the noise from shooting firearms.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

74.     Plaintiff Morse is not a prohibited person, and if Illinois allowed him to purchase

and own a suppressor, he would apply to the ATF for permission to own a suppressor, including paying the $200 transfer tax and subjecting himself to an invasive and lengthy background process.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

75.     But for Illinois law, Plaintiff Morse would be legally allowed to own a suppressor under federal law. Therefore, his desire to own a suppressor is redressable by this Court.

**ANSWER**: Defendant denies Plaintiff's alleged desire to own a suppressor is redressable by this Court. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

76.     But because Illinois bans suppressors for Morse to own and possess, he cannot apply for one, as the ATF cannot, by law, approve his transfer if it would place him in violation of any other law. *See* 26 U.S.C. § 5812(a) ("Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law."). As such, it is futile for Morse to even apply to ATF for a transfer of a suppressor.

**ANSWER**: Defendant admits Plaintiffs have accurately quoted 26 U.S.C. § 5812(a). Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in this paragraph.

77.     Plaintiff Morse also wants to keep a suppressed firearm in his home, so that if he were ever required to use it indoors, he would not further damage his hearing and as he would likely not have enough time to put ear protection on before he would have to use his firearm in self-defense at home.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

78.     But for Illinois' law, Plaintiff Morse would acquire and possess and use suppressors. *See* Verification of Morse, Exhibit "2."

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

**COUNT I**

**U.S. CONST., AMEND. II, 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS**

79.     The Defendants prohibit Plaintiffs from acquiring, possessing, and using a suppressor. As such it violates Plaintiffs' Second Amendment rights.

**ANSWER**: Defendant denies the allegations in this paragraph.

80.     Defendants' laws, customs, practices and policies generally banning the acquisition, possession, carrying and use of suppressors violates the Second Amendment to the United States Constitution, facially and as applied against the Plaintiffs in this action, damaging Plaintiffs in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to preliminary and permanent injunctive relief against such laws, customs, policies, and practices.

**ANSWER**: Defendant denies the allegations in this paragraph.

**COUNT II**
**(DECLARATORY JUDGMENT)**

81.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein.

**ANSWER**: Defendant repeats and realleges his answers to the preceding paragraphs as his answer to paragraph 81.

82.     The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28

U.S.C. 2201(a).

**ANSWER**: Defendant admits the allegations in this paragraph.

83.     Absent a declaratory judgment, there is a substantial likelihood that Plaintiffs will suffer irreparable injury in the future.

**ANSWER**: Defendant denies the allegations in this paragraph.

84.     There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

**ANSWER**: Defendant denies the allegations in this paragraph.

85.     This Court [sic] possesses an independent basis for jurisdiction over the parties.

**ANSWER**: Defendant denies the allegations in this paragraph.

86.     A judgment declaring that Defendants' policy which denies Plaintiffs the right to own, possess and acquire firearms is unconstitutional as applied to them.

**ANSWER**: Defendant denies the allegations in this paragraph.

87.     Alternatively, a declaration that 720 ILCS 5/24-1(a)(6) and any other applicable law which prohibits Plaintiffs from owning suppressors as unconstitutional as applied to Plaintiffs.

**ANSWER**: Defendant denies the allegations in this paragraph.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.     An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 720 ILCS 5/24-1(a)(6) and any other applicable law which prohibits Plaintiffs from owning and banning the acquisition, possession,

carrying or use of suppressors;

   **ANSWER**: Defendant denies Plaintiff is entitled to any relief whatsoever.

   2.      An order declaring that 720 ILCS 5/24-1(a)(6) and any other applicable law which prohibits Plaintiffs from owning suppressors is unconstitutional and violates the Second Amendment to the United States Constitution;

   **ANSWER**: Defendant denies Plaintiff is entitled to any relief whatsoever.

   3.      An order declaring 720 ILCS 5/24-1(a)(6) and any other applicable law which prohibits Plaintiffs from owning suppressors unenforceable;

   **ANSWER**: Defendant denies Plaintiff is entitled to any relief whatsoever.

   4.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

   **ANSWER**: Defendant denies Plaintiff is entitled to any relief whatsoever.

   5.      Such other Declaratory relief consistent with the injunction as appropriate; and

   **ANSWER**: Defendant denies Plaintiff is entitled to any relief whatsoever.

   6.      Such other further relief as the Court deems just and appropriate.

   **ANSWER**: Defendant denies Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

### 1.  Qualified Immunity

   At all times relevant to Plaintiffs' claims, Defendant acted in the good faith performance of his official duties without violating Plaintiffs' clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Defendant is therefore protected from liability by the doctrine of qualified immunity.

### 2.  Sovereign Immunity

   Plaintiffs' claims against the Attorney General in his official capacity are barred by the

doctrine of sovereign immunity.

### 3. Injunctive Relief Barred

To the extent Plaintiffs are suing Defendant for declaratory relief or injunctive relief not intended to address ongoing violations, Plaintiffs' requests for such relief are barred by the Eleventh Amendment and sovereign immunity.

### 4. Eleventh Amendment Immunity

Plaintiffs' claims against the Attorney General in his official capacity are barred by the Eleventh Amendment.

WHEREFORE, Defendant, KWAME RAOUL in his Official Capacity as the Attorney General of Illinois, requests the Court deny Plaintiffs' requested relief and enter judgment for Defendant.

Thomas R. Ewick, #6279084
Martin Plute #6330296
Assistant Attorneys General
500 South Second Street
Springfield, Illinois 62706
(217) 782-2077 Phone
(217) 524-5091 Fax
Email: Thomas.Ewick@ilag.gov
        Martin.Plute@ilag.gov

Respectfully submitted,

KWAME RAOUL, in his official capacity as the Attorney General of Illinois,

Defendant,

By:  /s/ Thomas R. Ewick
        Thomas R. Ewick, #6279084
        Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LARRY MORSE, | ) | |
| THEODORE RAY BUCK, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | No. 22-cv-02740-DWD |
| | ) | |
| KWAME RAOUL, in his official capacity | ) | |
| as the Attorney General of Illinois, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2023, the foregoing document, *Partial Answer and Affirmative Defenses*, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Alan Alexander Beck | alan.alexander.beck@gmail.com |
| Stephen Stamboulieh | stephen@sdslaw.us |
| | |
| Joseph D. Bracey, Jr | jbracey@okgc.com |
| Bhairav Radia | bradia@okgc.com |
| | |
| Martin Plute | martin.plute@ilag.gov |

And I hereby certify that on the same date, I caused a copy of the foregoing document to be mailed by United States Postal Service, to the following non-registered participant:

None

Respectfully submitted,

s/ Thomas R. Ewick
Thomas R. Ewick, #6279084
Assistant Attorney General
500 South Second Street
Springfield, IL 62701
(217) 782-2077 Phone
(217) 782-8767 Fax
Email: Thomas.Ewick@ilag.gov