# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY MORSE,<br>THEODORE RAY BUCK, JR.,<br><br>      Plaintiffs,<br><br>-vs-<br><br>KWAME RAOUL, in his official capacity<br>as the Attorney General of Illinois, et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)  No. 22-cv-02740-DWD<br>)<br>)<br>)<br>)<br>) |

## MOTION TO STRIKE

NOW COMES the Defendant, KWAME RAOUL, in his official capacity as the Attorney General of Illinois, , and pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, hereby moves to strike the paragraphs of Plaintiff's Amended Complaint (Doc. 8) which consist of improper legal arguments. In support thereof, Defendant, states the following:

## INTRODUCTION

On December 8, 2022, Plaintiffs, Larry Morse and Theodore Ray Buck, Jr., filed their amended complaint for declaratory and injunctive relief, in which they argue Illinois' regulation of firearm suppressors violates the Second Amendment. (Doc. 8, ¶¶ 80, 86-87.) Plaintiffs request a preliminary and permanent injunction enjoining Defendants from enforcing 720 ILCS 5/24-1(a)(6) and any other law which prohibits them from owning, acquiring, possessing, carrying, or using suppressors, an order declaring 720 ILCS 5/24-1(a)(6) unconstitutional, and costs of suit including attorney fees. (Doc. 1, Prayer for Relief.)

Much of Plaintiffs' complaint consists of improper legal conclusions and argument, and Defendant Kwame Raoul moves to strike those paragraphs accordingly. Separately, he has filed a

partial answer and affirmative defenses, which answers the factual allegations in Plaintiffs' amended complaint.

## PARAGRAPHS OF AMENDED COMPLAINT AT ISSUE

The amended complaint (Doc. 8) contains the following paragraphs which Defendant moves to strike:

10. Arms are "'weapons of offence, or armor of defense.' 1 Dictionary of the English Language 107 (4th ed.)" They are anything that a man [or woman] wears for his defense, or takes into his hands, or uses in wrath to cast at or strike another.' 1 A New and Complete Law Dictionary (1771)." *District of Columbia v. Heller*, 554 U.S. at 581.

11. The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding. *Heller,* 554 U.S. at 582; *Caetano*, slip op. at 1 (per curiam). *See also Bruen*, at 2132 ("even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense.").

12. In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court established a test, centered around text, history, and tradition, for addressing Second Amendment challenges: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2129-2130.

13. "The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. Therefore, *Bruen* overturned the two-step test the circuit court had adopted. "Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, at 2127.

14. A recent case in the Northern District of Texas, applying *Bruen*, held that 18-20 year-olds have a right to carry firearms outside the home. *See Firearms Policy Coal., Inc. v. McCraw*, No. 4:21-cv-1245-P, 2022 U.S. Dist. LEXIS 152834 (N.D. Tex. Aug. 25, 2022). *See also Rocky Mountain Gun Owners, et al. v. The Town of Superior* (Civil Action No. 22-cv-01685- RM, July 22, 2022) (applying *Bruen*, granting TRO, and holding that the burden is on government to justify ban on assault weapons and large capacity magazines). *See also United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 U.S. Dist. LEXIS 168329 (W.D. Tex. Sep. 19, 2022) (striking 18 U.S.C. § 922(n) by applying *Bruen*). See also *United States v. Price*, No. 2:22-cr-00097, 2022 U.S. Dist. LEXIS 186571 (S.D. W. Va. Oct. 12, 2022) (striking 18 U.S.C. § 922(k) as unconstitutional). See also *United States v. Perez-Gallan*, No. PE:22-CR-00427-DC, 2022 U.S. Dist. LEXIS 204758 (W.D. Tex. Nov. 10, 2022) (striking 18 U.S.C. § 922(g)(8) as unconstitutional). *See also Antonyuk v. Hochul*, No. 1:22-CV-0986 (GTS/CFH), 2022 U.S. Dist. LEXIS 182965 (N.D.N.Y. Oct. 6, 2022) (granting in part a temporary restraining order against a number of defendants ability to enforce several New York State firearm laws.)

15. Under the Second Amendment, the Defendants retains [sic] the ability presumptively to regulate the manner of carrying arms and may prohibit certain arms in narrowly defined sensitive places, prohibit the carrying of arms that are not within the scope of Second Amendment's [sic] protection such as "dangerous and unusual" arms, and disqualify specific, particularly dangerous individuals from carrying arms. *See Heller,* 554 U.S. at 627.

\* \* \*

18. Given the decision in *Heller*, Defendants may not completely ban the keeping and bearing of arms for self-defense that are typically possessed for lawful purposes, deny individuals the right to carry arms in non-sensitive places, deprive individuals of the right to keep or carry arms in an arbitrary and capricious manner, or impose regulations on the right to keep and carry arms that are inconsistent with the Second Amendment. *See Caetano v. Massachusetts*, 577 U.S. 411 (2016); *Heller v. District of Columbia,* 801 F.3d 264 (D.C. Cir. 2015); *Palmer v. District of Columbia,* 59 F.Supp.3d 173 (2014).

19. As detailed further below, both Plaintiffs have standing to challenge Illinois' ban on suppressors. *See Ezell v. City of Chicago*, 651 F.3d 684, 695-96 (7th Cir. 2011) (explaining in dicta that plaintiffs' injuries "easily support[ed] Article III standing" where plaintiffs challenging the Ordinance's provisions relating to firing ranges alleged that they owned firearms and wanted to maintain their proficiency, and traveled outside of the City to complete the range training necessary to apply for a permit to legalize their firearm possession in the City). *See also Second Amendment Arms v. City of Chi.*, 135 F. Supp. 3d 743, 751 (N.D. Ill.

2015) ("Second Amendment Arms surely has many would-be customers who reside in Chicago who would have standing to sue in their own right."); *See also Ill. Ass'n of Firearms Retailers v. City of Chi.*, 961 F. Supp. 2d 928 (N.D. Ill. 2014) (allowing lawsuit to proceed based on desire to purchase prohibited firearms); See also *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 967 (9th Cir. 2014) ("[T]he injury Jackson alleges is not the inconvenience of leaving San Francisco; rather, she alleges that the Second Amendment provides her with a "legally protected interest," *id*., to purchase hollow-point ammunition, and that but for section 613.10(g), she would do so within San Francisco. […] Accordingly, section 613.10(g) constitutes an injury in fact to Jackson, and she has standing to challenge it.").

\* \* \*

21.     Suppressors are regulated under the National Firearms Act ("NFA") and defined as a "firearm." See 26 U.S.C. § 5845(7). The Gun Control Act ("GCA"), 18 U.S.C. § 921(a)(3), also independently defines silencer (which is commonly referred to as a suppressor) as a "firearm." It defines "firearm" as:

(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

\* \* \*

27.     In *Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 331, 670 F.3d 1244, 1261 (2011) the D.C. Court of Appeals evaluated the District Court of Columbia's ban on magazines which hold more than ten rounds and assault weapons. The Court found that both were "arms." Then, it found that in order to determine whether they received Second Amendment protection, the Court had to

determine whether they were "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 399 U.S. App. D.C. 314 at 330.

    28.    It then found that both the prohibited magazines and assault weapons are in common use. In the case of AR-15s, the Court found that they were in common use because "1.6 million AR-15s alone have been manufactured since 1986." *Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 331, 670 F.3d 1244, 1261 (2011). In the same way that magazines are arms, so are suppressors. *See also Hollis v. Lynch*, 827 F.3d 436, 449 (5th Cir. 2016) ("... two justices suggested that the 200,000 absolute number, plus that 45 states have 'accepted [stun guns] as a legitimate means of self-defense,' was enough to determine that the stun gun is in common use.").

    29.    In *United States v. Miller*, 307 U.S. 174 (1939), the Supreme Court recognized that the "Arms" the people had the right to keep and bear were not strictly limited to firearms but included "ordinary military equipment" such as ammunition, bayonets and iron ramrods fitted on the firearm's barrel, and other "proper accoutrements." 307 U.S. at 180-82. Although modern suppressors of the sort at issue here were invented long after the Second Amendment was ratified, the Amendment "'extends . . . to . . . arms . . . that were not in existence at the time of the founding.'" *Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027, 1027 (2016) (quoting *Heller*, 554 U.S. at 582).

    \* \* \*

    31.    In *Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027, 1032-33 (2016), Justice Alito stated the following in his concurring opinion:

The more relevant statistic is that '[h]undreds of thousands of Tasers and stun guns have been sold to private citizens,' who it appears may lawfully possess them in 45 States. *People v. Yanna*, 297 Mich. App. 137, 144, 824 N. W. 2d 241, 245 (2012) (holding Michigan stun gun ban unconstitutional); see Volokh, Nonlethal Self-Defense, (Almost Entirely) Nonlethal Weapons, and the Rights To Keep and Bear Arms and Defend Life, 62 Stan. L. Rev. 199, 244 (2009) (citing stun gun bans in seven States); Wis. Stat. §941.295 (Supp. 2015) (amended Wisconsin law permitting stun gun possession); see also Brief in Opposition 11 (acknowledging that 'approximately 200,000 civilians owned stun guns' as of 2009).

32. The Southern District of New York found nunchucks to be protected arms despite the Plaintiffs only being able to prove "64,890 nunchakus" in civilian hands. *Maloney v. Singas*, 351 F. Supp. 3d 222, 237-38 (E.D.N.Y. 2018). A federal court even struck down a ban on flash suppressors, holding that such a ban violates the Second Amendment. *Murphy v. Guerrero*, No. 1:14-CV-00026, 2016 U.S. Dist. LEXIS 135684, *88 (D. N. Mar. I. Sep. 28, 2016) (unpublished). The court understood flash suppressors to be much like suppressors—an attachment to the front barrel "which attaches to the front barrel of the rifle [and] reduces noise and potentially increases accuracy." *Murphy*, at *65.

* * *

34. And the primary purpose of suppressors are for lawful purposes, including hunting, which *Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 331, 670 F.3d 1244, 1261 (2011) holds is part of the Second Amendment right, self-defense (the core right pursuant to *District of Columbia v. Heller*, 554 U.S. 570, 628, 128 S. Ct. 2783, 2817 (2008)) and target shooting which both the Seventh and Third Circuits have already found to be protected Second Amendment conduct. The right to self-defense "implies a corresponding right to acquire and maintain proficiency" with common weapons. *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) [hereinafter *Ezell I*].

35. A right to bear those weapons, after all, "wouldn't mean much without the training and practice that make [them] effective.'" *Drummond v. Robinson Twp.*, No. 20-1722, 2021 U.S. App. LEXIS 24511, at *12-13 (3d Cir. Aug. 17, 2021) *See also Ezell I*, at 704. *See also Greenlee, Joseph, The Right to Train: A Pillar of the Second Amendment* (April 21, 2022). William & Mary Bill of Rights Journal, Vol. 31, 2022 (Forthcoming), Available at SSRN: https://ssrn.com/abstract=4089974 or http://dx.doi.org/10.2139/ssrn.4089974.

\* \* \*

37. In *United States v. Miller*, 307 U.S. 174 (1939), the Supreme Court recognized that the Second Amendment secures the people a right not only to arms but also to accessories and "proper accoutrements." *Id*. at 180-82.

38. Other circuits have found that the Second Amendment applies to items such as accessories that are used with arms. *See e.g. Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (hollow-point ammunition); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 253-55 (2d Cir. 2015) (firearm magazines); *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("*Heller II*") (same); *Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) (same).

39. In *Friedman v. City of Highland Park*, 784 F.3d 406, 410 (7th Cir. 2015), the 7th Circuit reviewed a ban on assault rifles and magazines which hold more than ten rounds.

40. The 7th Circuit applied the same test to both magazines and assault rifles to determine whether they are protected by the Second Amendment.

*Friedman v. City of Highland Park*, 784 F.3d 406, 410 (7th Cir. 2015). *See also Wilson v. Cook Cty.*, 937 F.3d 1028, 1029 (7th Cir. 2019) (applying the same test to a virtually identical law).

41. Thus, the 7th Circuit has found that firearm accessories like magazines and suppressors may be protected by the Second Amendment and the test to determine whether they are protected is the same test which applies to arms.

42. While *Friedman* has been called into question by *Bruen*, this Court should still similarly find that firearm accessories such as magazines and suppressors are protected by the Second Amendment utilizing the same test that applies to arms.

43. For the reasons provided, whether viewed as arms or accessories, suppressors are protected by the Second Amendment because they are in common use for lawful purposes.

\* \* \*

60. Illinois actively enforces this ban. *See eg. People v. Williams*, 2021 IL App (1st) 181964-U, ¶ 4 ("In December 2016, defendant was charged by indictment with five counts of UUWF (720 ILCS 5/24-1.1(a) (West 2016)), based on his possession of a […](count X) of UUWF based upon possession of a device "used or intended for used in silencing the report of any firearm, to wit: a black flash suppressor.""); *See People v. Lydon*, 2015 IL App (1st) 143478-U, ¶ 16 (" Defendant does not deny that these four guns and the silencer were seized at his apartment and are among the items he now wishes to be returned,"); *People v. Davis*, 86 Ill. App. 3d 557, 558, 41 Ill. Dec. 611, 613, 407 N.E.2d 1109, 1111 (1980)

("The detectives then conducted a pat-down of Black and the defendant. Poss opened the case and found an automatic pistol and a silencer inside. Poss then placed defendant under arrest."). "Following a jury trial, defendant, Mark Pearson was convicted of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56-1/2, par. 1401 (now 720 ILCS 570/401 (West 1992))) and two counts of unlawful use of a weapon (Ill. Rev. Stat. 1989, ch. 38, par. 24-1 (now 720 ILCS 5/24-1 (West 1992))) [for possession of two suppressors]." *People v. Pearson*, 271 Ill. App. 3d 640, 640, 208 Ill. Dec. 102, 103, 648 N.E.2d 1024, 1025 (1995).

## LEGAL STANDARD

Under Rule 8(a), pleadings "*must* contain . . . a *short* and *plain* statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). Rule 12(f) of the Federal Rules of Civil Procedure provides the Court may strike from any "pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

## ARGUMENT

Rather than setting forth a short and plain statement of their claim, Plaintiffs bulk up their complaint with numerous, lengthy, immaterial, impertinent, and improper legal arguments and conclusions, and the Court should strike those paragraphs accordingly.

In *Nance v. Emages, Inc.*, No. 20 C 6316, 2022 U.S. Dist. LEXIS 104927, at *5-6 (N.D. Ill. June 13, 2022), the Northern District Court struck the legal arguments contained in the complaint. It noted the following: "The occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate." *Id.* (citing *Stauffer v. Westmoreland*

*Ob-Gyn Assoc., S.C.* No. 00 C 1242, 2000 U.S. Dist. LEXIS 11454, at * 1 (N.D. Ill. July 27, 2000)). In *Stauffer*, the Defendants moved to strike the complaint, arguing it violated Rule 8(a) as it was full of conclusions of law and argument. *Id.* The District Court noted that while the Plaintiff was correct that she had to meet the particularity requirements of Rule 9, she did not need to argue her entire case in the complaint and should not do so. *Id*. The Court granted the motion to strike with leave to amend. *Id.*; *see also e.g Ford v. Wilson,* No. 93 C 20342, 1995 U.S. Dist. LEXIS 8430 at *11 (N.D. Ill. June 6, 1995) (granting the defendant's motion to strike the allegations of the complaint consisting of argument, legal authority and legal conclusions and denying it as to the redundant and overly detailed factual allegations).

Here, the Plaintiffs' amended complaint is replete with conclusions of law and argument. As identified above, at least 24 of Plaintiffs' 87 paragraphs, i.e., *more than 27% of the numbered allegations*,[1] are legal conclusions one would expect to find in a memorandum of law, not a short and plain statement under Rule 8. They consist of characterizations and lengthy quotations of case law (Am. Compl. ¶¶ 11-15, 18-19, 27-29, 31-32, 34-35, 37-42, 60), including discussions of recent district court cases (*id.* ¶ 14), how other circuits and trial courts evaluate Second Amendment claims (*id.* ¶¶ 14, 18, 19, 27, 28, 32, 34, 35, 38), what courts evaluated, found, held, recognized, or merely reviewed, including paragraphs alleging nothing more than that the Seventh Circuit "reviewed a ban" or "applied the same test" (*id.* ¶¶ 39-40), and what certain Justices "suggested," or stated in concurrences (*id.* ¶¶ 28, 31). Plaintiffs also characterize statutes that aren't challenged in the complaint (*id.* ¶ 21). And any doubt that Plaintiffs have included a legal brief in their

---

[1] Judging by volume, the ratio is even worse, as the identified paragraphs comprise approximately 7 full pages of 20 page complaint. Thus, even when including the request for relief, caption, introduction, and signature block, the legal arguments and conclusions identified herein comprise *35% of the amended complaint*. As another metric, Windows Word gives a word count of 2,285 for the identified paragraphs, compared with 5,723 words for the entire complaint (not including page numbers or the file-stamp markings), which is just shy of *40% of the amended complaint*.

amended complaint is easily dispelled by paragraphs 42 and 43, which purport to allege what "this Court should" do (*id.* ¶ 42) and that the Second Amendment protects suppressors "[f]or the *reasons* provided." (*id.* ¶ 43 (emphasis added)).

As in *Nance* and *Stauffer*, the Court should strike paragraphs 10-15, 18-19, 21, 27-29, 31-32, 34-35, 37, 39-43, and 60 of the amended complaint. Those paragraphs do not comply with the short and plain statement requirement of Rule 8(a) and do not state *facts* establishing a claim for relief. As in *Nance*, Plaintiffs' amended complaint is not composed of a numbered statement of alleged facts with "[t]he occasional legal conclusion," but is rather the opposite: a legal brief with the occasional factual allegation sprinkled therein.

Paragraphs 10-15, 18-19, 21, 27-29, 31-32, 34-35, 37-43, and 60 all contain legal arguments and conclusions which are not appropriate for pleadings. Accordingly, those paragraphs should be stricken as immaterial and impertinent matter under Rule 12(f).

WHEREFORE, Defendant, KWAME RAOUL in his Official Capacity as the Attorney General of Illinois, respectfully requests the Court strike paragraphs 10-15, 18-19, 21, 27-29, 31-32, 34-35, 37-43, and 60 of the amended complaint.

Respectfully submitted,

KWAME RAOUL, in his official capacity as the Attorney General of Illinois,

Defendant,

Thomas R. Ewick, #6279084
Martin Plute #6330296
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706                 By: /s/ Thomas R. Ewick
(217) 782-2077 Phone                            Thomas R. Ewick, #6279084
(217) 524-5091 Fax                              Assistant Attorney General
Email: Thomas.Ewick@ilag.gov
       Martin.Plute@ilag.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY MORSE, <br> THEODORE RAY BUCK, JR., <br><br> Plaintiffs, <br><br> -vs- <br><br> KWAME RAOUL, in his official capacity <br> as the Attorney General of Illinois, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 22-cv-02740-DWD <br> ) <br> ) <br> ) <br> ) <br> ) |

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2023, the foregoing document, *Motion to Strike*, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Alan Alexander Beck          alan.alexander.beck@gmail.com
Stephen Stamboulieh          stephen@sdslaw.us

Joseph D. Bracey, Jr         jbracey@okgc.com
Bhairav Radia                bradia@okgc.com

Martin Plute                 martin.plute@ilag.gov

And I hereby certify that on the same date, I caused a copy of the foregoing document to be mailed by United States Postal Service, to the following non-registered participant:

None

                                      Respectfully submitted,

                                      s/ Thomas R. Ewick
                                      Thomas R. Ewick, #6279084
                                      Assistant Attorney General
                                      500 South Second Street
                                      Springfield, IL 62701
                                      (217) 782-2077 Phone
                                      (217) 782-8767 Fax
                                      Email: Thomas.Ewick@ilag.gov