10452-227                                                                                                      22-cv-2740

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LARRY MORSE and THEODORE RAY BUCK, JR. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 22-cv-2740-DWD |
| KWAME RAOUL, et al. | ) ) ) ) | |
| Defendants. | ) | |

## MOTION TO STRIKE PLAINTIFF'S COMPLAINT

NOW COMES Defendant SEAN FEATHERSTUN, in his Official Capacity as State's Attorney for Jefferson County, Illinois, by and through his attorney, Keith B. Hill of HEYL, ROYSTER, VOELKER & ALLEN, P.C., and pursuant to Fed. R. Civ. P. 12(f) hereby moves to strike Plaintiff's Verified Amended Complaint for Declaratory and Injunctive Relief (Doc. 8). For his motion, Defendant states:

1. On December 8, 2022, Plaintiffs, Larry Morse and Theodore Ray Buck, Jr., filed their Verified Amended Complaint for Declaratory and Injunctive Relief ("Complaint"), in which they argue that Illinois's regulation of firearm suppressors violates the Second Amendment. (Doc. 8). Plaintiffs request a preliminary and permanent injunction enjoying Defendants from enforcing 720 ILCS 5/24-1(a)(6) and any other law which prohibits them from owning, acquiring, possessing, carrying, or using suppressors, an order declaring 720 ILCS 5/24-1(a)(6) unconstitutional, and costs of suit including attorney fees.

2. Plaintiffs' Complaint is replete with legal argument. Defendant moves to strike Plaintiffs' Complaint in its entirety to avoid piecemeal pleadings. *See Graham v. Flintkote Co.*,

1995 WL 88949, *1 (N.D.Ill. 1995) (striking entirety of defendant's answer to avoid piecemeal pleading where it was "shot through" with defect).

    3.    The following paragraphs of Plaintiffs' Complaint contain legal argument:

    10.    Arms are "'weapons of offence, or armour of defence.' 1 Dictionary of the English Language 107 (4th ed.)" They are anything that a man [or woman] wears for his defense, or takes into his hands, or uses in wrath to cast at or strike another.'1 A New and Complete Law Dictionary (1771)." *District of Columbia v. Heller*, 554 U.S. at 581.

    11.    The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding. *Heller*, 554 U.S. at 582; *Caetano*, slip op. at 1 (per curiam). *See also Bruen*, at 2132 ("even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense.").

    12.    In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court established a test, centered around text, history, and tradition, for addressing Second Amendment challenges: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129-2130.

    13.    "The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. Therefore, *Bruen* overturned the two-step test the circuit court had adopted. "Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, at 2127.

    14.    A recent case in the Northern District of Texas, applying *Bruen*, held that 18-20 year-olds have a right to carry firearms outside the home. *See Firearms Policy Coal., Inc. v. McCraw*, No. 4:21-cv-1245-P, 2022 U.S. Dist. LEXIS 152834 (N.D. Tex. Aug. 25, 2022). *See also Rocky Mountain Gun Owners, et al. v. The Town of Superior* (Civil Action No. 22-cv-01685-RM, July 22, 2022) (applying *Bruen*, granting TRO, and holding that the burden is on government to justify ban on assault weapons and large capacity magazines). *See also United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 U.S. Dist. LEXIS 168329 (W.D. Tex. Sep. 19, 2022) (striking 18 U.S.C. § 922(n) by applying *Bruen*). *See also United States v. Price*, No. 2:22-cr-00097, 2022 U.S. Dist. LEXIS 186571 (S.D. W. Va. Oct. 12, 2022) (striking 18 U.S.C. § 922(k) as unconstitutional). *See also United States v. Perez-Gallan*, No. PE:22-CR-00427-

DC, 2022 U.S. Dist. LEXIS 204758 (W.D. Tex. Nov. 10, 2022) (striking 18 U.S.C. § 922(g)(8) as unconstitutional). *See also Antonyuk v. Hochul*, No. 1:22-CV-0986 (GTS/CFH), 2022 U.S. Dist. LEXIS 182965 (N.D.N.Y. Oct. 6, 2022) (granting in part a temporary restraining order against a number of defendants ability to enforce several New York State firearm laws.)

15. Under the Second Amendment, the Defendants retains the ability presumptively to regulate the manner of carrying arms and may prohibit certain arms in narrowly defined sensitive places, prohibit the carrying of arms that are not within the scope of Second Amendment's protection such as "dangerous and unusual" arms, and disqualify specific, particularly dangerous individuals from carrying arms. *See Heller*, 554 U.S. at 627.

16. The phrase dangerous and unusual weapons historically refers to time, place and manner restrictions on arms. *See* Page, Daniel Richard, Dangerous and Unusual Misdirection: A Look at the Common Law Tradition of Prohibiting Going Armed with Dangerous and Unusual Weapons to the Terror of the People, as Cited in District of Columbia versus *Heller* (May 4, 2011). Available at SSRN: https://ssrn.com/abstract=1859395. or http://dx.doi.org/10.2139/ssrn.1859395

17. Therefore, a suppressor is not dangerous and unusual and the mere ownership of a suppressor does not implicate the tradition of prohibiting the carrying of dangerous and unusual weapons.

18. Given the decision in *Heller*, Defendants may not completely ban the keeping and bearing of arms for self-defense that are typically possessed for lawful purposes, deny individuals the right to carry arms in non-sensitive places, deprive individuals of the right to keep or carry arms in an arbitrary and capricious manner, or impose regulations on the right to keep and carry arms that are inconsistent with the Second Amendment. *See Caetano v. Massachusetts*, 577 U.S. 411 (2016); *Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015); Palmer v. District of Columbia, 59 F.Supp.3d 173 (2014).

19. As detailed further below, both Plaintiffs have standing to challenge Illinois' ban on suppressors. *See Ezell v. City of Chicago*, 651 F.3d 684, 695-96 (7th Cir. 2011) (explaining in dicta that plaintiffs' injuries "easily support[ed] Article III standing" where plaintiffs challenging the Ordinance's provisions relating to firing ranges alleged that they owned firearms and wanted to maintain their proficiency, and traveled outside of the City to complete the range training necessary to apply for a permit to legalize their firearm possession in the City). *See also Second Amendment Arms v. City of Chi.*, 135 F. Supp. 3d 743, 751 (N.D. Ill. 2015) ("Second Amendment Arms surely has many would-be customers who reside in Chicago who would have standing to sue in their own right."); *See also Ill. Assn of Firearms Retailers v. City of Chi.*, 961 F. Supp. 2d 928 (N.D. Ill. 2014) (allowing lawsuit to proceed based on desire to purchase prohibited firearms); *See also Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 967

10452-227                                                                                                                22-cv-2740

(9th Cir. 2014) ("[T]he injury Jackson alleges is not the inconvenience of leaving San Francisco; rather, she alleges that the Second Amendment provides her with a "legally protected interest," *id*., to purchase hollow-point ammunition, and that but for section 613.10(g), she would do so within San Francisco. [...] Accordingly, section 613.10(g) constitutes an injury in fact to Jackson, and she has standing to challenge it.").

   \*\*\*

   27.   In *Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 331, 670 F.3d 1244, 1261 (2011) the D.C. Court of Appeals evaluated the District Court of Columbia's ban on magazines which hold more than ten rounds and assault weapons. The Court found that both were "arms." Then, it found that in order to determine whether they received Second Amendment protection, the Court had to determine whether they were "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 399 U.S. App. D.C. 314 at 330.

   28.   It then found that both the prohibited magazines and assault weapons are in common use. In the case of AR-15s, the Court found that they were in common use because "1.6 million AR-15s alone have been manufactured since 1986." *Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 331, 670 F.3d 1244, 1261 (2011). In the same way that magazines are arms, so are suppressors. *See also Hollis v. Lynch*, 827 F.3d 436, 449 (5th Cir. 2016) ("... two justices suggested that the 200,000 absolute number, plus that 45 states have 'accepted [stun guns] as a legitimate means of self-defense,' was enough to determine that the stun gun is in common use.").

   29.   In *United States v. Miller*, 307 U.S. 174 (1939), the Supreme Court recognized that the "Arms" the people had the right to keep and bear were not strictly limited to firearms but included "ordinary military equipment" such as ammunition, bayonets and iron ramrods fitted on the firearm's barrel, and other "proper accoutrements." 307 U.S. at 180-82. Although modern suppressors of the sort at issue here were invented long after the Second Amendment was ratified, the Amendment "'extends . . . to . . . arms . . . that were not in existence at the time of the founding.'" *Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027, 1027 (2016) (quoting *Heller*, 554 U.S. at 582).

   \*\*\*

   31.   In *Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027, 1032-33 (2016), Justice Alito stated the following in his concurring opinion:
   The more relevant statistic is that '[h]undreds of thousands of Tasers and stun guns have been sold to private citizens,' who it appears may lawfully possess them in 45 States. *People v. Yanna*, 297 Mich. App. 137, 144, 824 N. W. 2d 241, 245 (2012) (holding Michigan stun gun ban unconstitutional); see Volokh, Nonlethal Self-Defense, (Almost Entirely) Nonlethal Weapons, and the Rights To Keep and Bear Arms and Defend

Life, 62 Stan. L. Rev. 199, 244 (2009) (citing stun gun bans in seven States); Wis. Stat. §941.295 (Supp. 2015) (amended Wisconsin law permitting stun gun possession); see also Brief in Opposition 11 (acknowledging that `approximately 200,000 civilians owned stun guns' as of 2009).

32. The Southern District of New York found nunchucks to be protected arms despite the Plaintiffs only being able to prove "64,890 nunchakus" in civilian hands. *Maloney v. Singas*, 351 F. Supp. 3d 222, 237-38 (E.D.N.Y. 2018). A federal court even struck down a ban on flash suppressors, holding that such a ban violates the Second Amendment. *Murphy v. Guerrero*, No. 1:14-CV-00026, 2016 U.S. Dist. LEXIS 135684, *88 (D. N. Mar. I. Sep. 28, 2016) (unpublished). The court understood flash suppressors to be much like suppressors—an attachment to the front barrel "which attaches to the front barrel of the rifle [and] reduces noise and potentially increases accuracy." *Murphy*, at *65.

\*\*\*

34. And the primary purpose of suppressors are for lawful purposes, including hunting, which *Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 331, 670 F.3d 1244, 1261 (2011) holds is part of the Second Amendment right, self-defense (the core right pursuant to *District of Columbia v. Heller*, 554 U.S. 570, 628, 128 S. Ct. 2783, 2817 (2008)) and target shooting which both the Seventh and Third Circuits have already found to be protected Second Amendment conduct. The right to self-defense "implies a corresponding right to acquire and maintain proficiency" with common weapons. *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) [hereinafter *Ezell I*].

35. A right to bear those weapons, after all, "wouldn't mean much without the training and practice that make [them] effective.'" *Drummond v. Robinson Twp*., No. 20-1722, 2021 U.S. App. LEXIS 24511, at *12-13 (3d Cir. Aug. 17, 2021) *See also Ezell I*, at 704. *See also Greenlee, Joseph, The Right to Train: A Pillar of the Second Amendment* (April 21, 2022). William & Mary Bill of Rights Journal, Vol. 31, 2022 (Forthcoming), Available at SSRN: https://ssrn.com/abstract=4089974 or http://dx.doi.org/10.2139/ssrn.4089974.

**\*\*\***

37. In *United States v. Miller*, 307 U.S. 174 (1939), the Supreme Court recognized that the Second Amendment secures the people a right not only to arms but also to accessories and "proper accoutrements." *Id*. at 180-82.

38. Other circuits have found that the Second Amendment applies to items such as accessories that are used with arms. *See e.g. Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (hollow-point ammunition);

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 253-55 (2d Cir. 2015) (firearm magazines); *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("*Heller II*") (same); *Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) (same).

39. In *Friedman v. City of Highland Park*, 784 F.3d 406, 410 (7th Cir. 2015), the 7th Circuit reviewed a ban on assault rifles and magazines which hold more than ten rounds.

40. The 7th Circuit applied the same test to both magazines and assault rifles to determine whether they are protected by the Second Amendment. *Friedman v. City of Highland Park*, 784 F.3d 406, 410 (7th Cir. 2015). *See also Wilson v. Cook Cty.*, 937 F.3d 1028, 1029 (7th Cir. 2019) (applying the same test to a virtually identical law).

41. Thus, the 7th Circuit has found that firearm accessories like magazines and suppressors may be protected by the Second Amendment and the test to determine whether they are protected is the same test which applies to arms.

42. While *Friedman* has been called into question by *Bruen*, this Court should still similarly find that firearm accessories such as magazines and suppressors are protected by the Second Amendment utilizing the same test that applies to arms.

43. For the reasons provided, whether viewed as arms or accessories, suppressors are protected by the Second Amendment because they are in common use for lawful purposes.

\*\*\*

60. Illinois actively enforces this ban. *See eg. People v. Williams*, 2021 IL App (1st) 181964-U, ¶ 4 ("In December 2016, defendant was charged by indictment with five counts of UUWF (720 ILCS 5/24-1.1(a) (West 2016)), based on his possession of a [...](count X) of UUWF based upon possession of a device "used or intended for used in silencing the report of any firearm, to wit: a black flash suppressor.""); *See People v. Lydon*, 2015 IL App (1st) 143478-U, ¶ 16 ("Defendant does not deny that these four guns and the silencer were seized at his apartment and are among the items he now wishes to be returned,"); *People v. Davis*, 86 Ill. App. 3d 557, 558, 41 III. Dec. 611, 613, 407 N.E.2d 1109, 1111 (1980) ("The detectives then conducted a pat-down of Black and the defendant. Poss opened the case and found an automatic pistol and a silencer inside. Poss then placed defendant under arrest."). "Following a jury trial, defendant, Mark Pearson was convicted of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56-1/2, par. 1401 (now 720 ILCS 570/401 (West 1992))) and two counts of unlawful use of a weapon (Ill. Rev. Stat. 1989, ch. 38, par. 24-1 (now 720 ILCS 5/24-1 (West 1992))) [for possession of two

10452-227                                                                                                                      22-cv-2740

suppressors]." *People v. Pearson*, 271 Ill. App. 3d 640, 640, 208 Ill. Dec. 102, 103, 648 N.E.2d 1024, 1025 (1995).

4. The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). In addition, a party "must state its claim or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Pursuant to Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant or immaterial, impertinent, or scandalous matter."

5. In *Nance v. Emages, Inc.*, 2022 WL 2116581 (N.D.Ill. June 13, 2022), in striking the legal arguments in the plaintiff's complaint, the court stated, "[t]he occasional legal conclusion among a numbered statement of alleged facts is often not worth the trouble of striking, but, here, plaintiff has essentially included a legal brief in his complaint. That is wholly inappropriate." *Id*. at *2.

6. In *Stauffer v. Westmoreland Obstetric and Gynecologic Associates, S.C.*, 2000 WL 331284933 (N.D. Ill. July 27, 2000), the defendants moved to strike the plaintiff's complaint, contending that it violated Rule 8(a) of the Federal Rules of Civil Procedure and it was "replete with conclusions of law and argument." *Id*. at *1. In granting the defendants' motion, the court acknowledged that the plaintiff must meet the particularity requirements of Rule 9 and that pleading conclusions of law is not necessarily inappropriate. *Id*. But, the court stated, "[the plaintiff] does not need to argue her entire case in her pleadings, and she should not do so."

10452-227                                                                                                                                            22-cv-2740

7.     In *Hardin v. American Electric Power*, 188 F.R.D. 509 (S.D. Ind. August 31, 1999), rather than attempting to answer the plaintiff's complaint, the defendant filed a motion to strike pursuant to Ruel 12(f), contending that the complaint failed to comply with Rule 8(a). *Id*. at 509. In granting the defendant's motion, the court observed that, among other defects, the "[the plaintiff] used his complaint as both pleading and argumentative brief. [The plaintiff] goes into minute detail and draws inferences that may be important in supporting his claim if the case is to go to trial. However, these details are not necessary in order for [the plaintiff] to state a claim in the first instance." *Id*. at 512. "Due to the pervasive nature of the Complaint's excesses," the court struck the complaint in its entirety. *Id*. *See also Hindleman v. Specialty Salesman Magazine, Inc.*, 1 F.R.D. 272 (N.D. Ill. May 1, 1940) (striking from the defendant's answer paragraphs that were "highly verbose and argumentative" because they offended Rule 8).

8.     In this case, like in *Stauffer*, Plaintiffs' Complaint is "replete with conclusions of law and argument." Like in *Nance*, *Stauffer* and *Harden*, Plaintiffs are trying to argue their entire case in their Complaint. But they do not need to, and their pleading offends Rule 8(a).

9.     Defendant will suffer prejudice as a result of this violation. Defendant must either incur the substantial cost of attempting to answer each paragraph specifically or deny many of the allegations at the risk of Rule 11 sanctions. Answering Plaintiff's Complaint requires Defendant to take a deep dive into Second Amendment jurisprudence and admit or deny various premises upon which Plaintiffs have built their legal argument that Illinois law offends the Second Amendment. While such effort may be necessary for briefing and oral argument, it is not necessary to state a claim in the first instance or to answer a complaint.

10.    Plaintiff's Complaint is an information avalanche. For example, in paragraph 14, Plaintiff cites six district court decisions from outside this Circuit. To answer that paragraph,

10452-227                                                                                                                                22-cv-2740

defendant would have to review, Shepardize, and analyze each of those decisions and possibly others. In paragraph 16, Plaintiff state a legal conclusion, and cite a 32-page paper authored by a university professor with 105 footnotes. To admit or deny the legal conclusion of paragraph 16, Defendant's work would only begin with reviewing and analyzing the paper and its footnotes.

WHEREFORE, Defendant SEAN FEATHERSTUN, in his Official Capacity as State's Attorney for Jefferson County, Illinois, respectfully requests that this Court strike Plaintiff's Verified Amended Complaint for Declaratory and Injunctive Relief (Doc. 8).

SEAN FEATHERSTUN, in his Official Capacity as State's Attorney for Jefferson County, Illinois, Defendant,

BY: _____/s/ Keith B. Hill_____
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
Keith B. Hill, ARDC #6277660

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
Suite 100, Mark Twain Plaza III
105 West Vandalia
Edwardsville, Illinois 62025 0467
Telephone 618.656.4646
Facsimile 309.420.0402
khill@heylroyster.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this **3rd** day of **February, 2023**, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ Keith B. Hill_____