## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LARRY MORSE, | ) | |
| THEODORE RAY BUCK, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | No. 22-cv-02740-DWD |
| | ) | |
| KWAME RAOUL, in his official capacity | ) | |
| as the Attorney General of Illinois, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ANSWER AND AFFIRMATIVE DEFENSES

NOW COMES the Defendant, KWAME RAOUL, in his official capacity as the Attorney General of Illinois, and pursuant to Rule 8 of the Federal Rule of Civil Procedure, hereby provides his Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint [Doc. 42], stating as follows:

Defendant denies all allegations contained in section headings and other portions of the Complaint that are not contained within specifically numbered paragraphs of the Complaint. All allegations, if not expressly admitted, are denied.

### I.     PARTIES

1.     Plaintiff Theodore Ray Buck, Jr. is a natural person and a citizen of the United States and of the State of Illinois and resides in Jefferson County, Illinois.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

2.     Plaintiff Larry Morse is a natural person and a citizen of the United States and of the State of Illinois and resides in Williamson County, Illinois.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

3.       Defendant Kwame Raoul is sued in his official capacity as the Attorney General of Illinois. As Attorney General, he is responsible for enforcing the State's laws, *see* 15 ILCS 205/4 (requiring that Attorney General "institute and prosecute all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer"), which include the State's suppressor ban.

**ANSWER:** Defendant admits Defendant Raoul is sued in his official capacity as the Attorney General of Illinois, that he has power to enforce certain laws of the State of Illinois, and that Plaintiffs have accurately quoted a portion of 15 ILCS 205/4. Defendant denies the remaining allegations in this paragraph.

4.       Defendant Theodore Hampson is sued in his official capacity as State's Attorney for Williamson County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the suppressor ban. Defendant Hampson's ongoing enforcement of the ban against Williamson County residents places Plaintiff Morse under imminent threat of arrest and prosecution should he violate the suppressor ban.

**ANSWER:** Defendant admits Defendant Hampson is sued in his official capacity. Defendant admits that powers and duties of the State's Attorneys are set forth in 55 ILCS 5/3-9005, but denies that Plaintiffs have accurately quoted section 3-9005. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

5.      Defendant Sean Featherstun is sued in his official capacity as State's Attorney for Jefferson County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the suppressor ban. Defendant Featherstun's ongoing enforcement of the suppressor ban against Jefferson County residents places Plaintiff Buck under imminent threat of arrest and prosecution should he violate the suppressor ban.

**ANSWER:** Defendant admits Defendant Featherston is sued in his official capacity. Defendant admits that powers and duties of the State's Attorneys are set forth in 55 ILCS 5/3-9005, but denies that Plaintiffs have accurately quoted section 3-9005. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

## II.      JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988.

**ANSWER:** Defendant admits subject matter jurisdiction is proper under 28 U.S.C. § 1331. Defendant denies the remaining allegations in this paragraph.

7.      Venue lies in this Court pursuant to 28 U.S.C. § 1391.

**ANSWER:** Defendant admits the allegations in this paragraph.

## III.      STATEMENT OF FACTS

### a. The Second Amendment

8.       The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep

and bear Arms shall not be infringed."

**ANSWER:** Defendant admits the allegations in this paragraph.

9.      The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. **ANSWER:** Defendant denies the allegations in this paragraph.

10.      Arms are "'weapons of offence, or armour of defence.' 1 Dictionary of the English Language 107 (4th ed.)" They are anything that a man [or woman] wears for his defense, or takes into his hands, or uses in wrath to cast at or strike another.' 1 A New and Complete Law Dictionary (1771)." *District of Columbia v. Heller*, 554 U.S. at 581.

**ANSWER:** Defendant admits the quotes in paragraph 10 appear *District of Columbia v. Heller*, which in turn quoted the dictionaries cited. Defendant denies the citations in paragraph 10 are accurate and denies the remaining allegations in paragraph 10.

11.      The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding, and covers modern instruments that facilitate armed self-defense.

**ANSWER:** Defendant denies the allegations in paragraph 11.

12.      Under the Second Amendment, the Defendants retain the ability presumptively to regulate the manner of carrying arms and may prohibit certain arms in narrowly defined sensitive places, prohibit the carrying of arms that are not within the scope of Second Amendment's protection such as "dangerous and unusual" arms, and disqualify specific, particularly dangerous individuals from carrying arms.

**ANSWER:** Defendant admits that the Second Amendment permits the regulation of the manner of carrying arms, including the carrying of arms in sensitive places and the carrying of

dangerous and unusual arms, which are not within the scope of the Second Amendment. Defendant admits that the Second Amendment permits the disqualification of dangerous individuals from carrying arms. Defendant denies paragraph 12 states all of the regulations that are permissible under the Second Amendment and denies the remaining allegations in paragraph 12.

13.     The phrase dangerous and unusual weapons historically refers to time, place and manner restrictions on arms.

**ANSWER:** Defendant denies the allegations in this paragraph.

14.     A suppressor is not dangerous and unusual and the mere ownership of a suppressor does not implicate the tradition of prohibiting the carrying of dangerous and unusual weapons.

**ANSWER:** Defendant denies the allegations in this paragraph.

15.     Defendants may not completely ban the keeping and bearing of arms for self-defense that are typically possessed for lawful purposes, deny individuals the right to carry arms in non-sensitive places, deprive individuals of the right to keep or carry arms in an arbitrary and capricious manner, or impose regulations on the right to keep and carry arms that are inconsistent with the Second Amendment.

**ANSWER:** Defendant admits the State may not regulate the right to keep and carry arms in a manner that is inconsistent with the Second Amendment. Defendant denies the remaining allegations in this paragraph.

**b. Suppressors**

16.     Suppressors are "firearms" within the context of the Second Amendment, and thus receive Second Amendment protection. As such, an outright ban on the possession of a suppressor violates the Second Amendment.

**ANSWER:** Defendant denies the allegations in this paragraph.

17.     Suppressors are regulated under the National Firearms Act ("NFA") and defined as a "firearm." See 26 U.S.C. § 5845(7). The Gun Control Act ("GCA"), 18 U.S.C. § 921(a)(3), also independently defines silencer (which is commonly referred to as a suppressor) as a "firearm." It defines "firearm" as:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

**ANSWER:** Defendant admits Plaintiff accurately quotes the authority contained in paragraph 17. Defendant denies that § 921(a)(3) or § 5845(7) defines "silencer" as a "firearm."

18.     Individuals who wish to purchase suppressors or other NFA regulated items are required by federal law to file an application with the Bureau of Alcohol, Tobacco, Firearms and Explosives, who will then approve or deny the application for transfer of the NFA item. *See* 26 U.S.C. § 5812.

**ANSWER:** Defendant admits the allegations in this paragraph.

19.     Suppressors are arms in common use for self-defense by civilians as well as by law enforcement.

**ANSWER:** Defendant denies the allegations in this paragraph.

20.     Suppressors are legal for ordinary individuals to own, possess, and use for lawful purposes, including self-defense, hunting, and target practice, in a supermajority of states (42).

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

21.     Likewise, there are no historical analogues banning suppressors, and suppressors

were not regulated at the federal level until the enactment of the National Firearms Act, which did not ban them, but instead subjected them to a tax, background, and registration scheme.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

22.     In 1803, Meriwether Lewis, of Lewis and Clark fame, carried an air gun, reputed to fire 22 rounds per minute, and 40 rounds from one "load" of compressed air, so noticeably quieter than the powder fueled contemporaries, that an air gun was used in an original Sherlock Holmes book as a plot device due to its relatively quiet operation.

**ANSWER: Defendant lacks knowledge or information sufficient to admit or deny the allegations in this paragraph.**

23.     In the same way that magazines are arms, so are suppressors.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph**.**

24.     The "Arms" the people <u>have</u> the right to keep and bear <u>are</u> not strictly limited to firearms but included "ordinary military equipment" such as ammunition, bayonets and iron ramrods fitted on the firearm's barrel, and other "proper accoutrements." Although modern suppressors of the sort at issue here were invented long after the Second Amendment was ratified, the <u>Second</u> Amendment <u>presumptively protects them.</u>

**ANSWER:** Defendant denies the allegations in this paragraph.

25.     As of 2020 [FN2 There are likely a much larger number, however, recent statistics are not available.], there were 2,042,719 suppressors owned by law abiding citizens as registered in the National Firearms Registration and Transfer Record ("NFRTR"), far more than was needed for the DC Circuit to find AR-15s in common use. And that is despite legal impediments to

owning a silencer, including the National Firearms Act requirements—paying a $200 transfer tax, submitting a detailed application and fingerprints, and a multi months-long wait for the federal government to process the application. *See* 26 U.S.C. § 5811. Even arms that are far less common have been found to be protected.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

26.     Suppressors are also typically used for lawful purposes and are "very rarely used in criminal shootings." Suppressors do not completely silence firearms or enable criminals using firearms to go undetected when they would otherwise be heard. See Nathan Rott, Debate Over Silencers:       Hearing       Protection       or       Public       Safety       Threat?, http://www.npr.org/2017/03/21/520953793/debate-over-silencers-hearing-protection-or-public-safety-threat (comparing the sound of four different firearms with and without a silencer); see also, David Kopel, The Hearing Protection Act and 'silencers', Washington Post, https://www.washingtonpost.com/news/volokh-conspiracy/wp/2017/06/19/the-hearing-protection-act-and-silencers/.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

27.     And the primary purpose of suppressors are for lawful purposes, including hunting, which is part of the Second Amendment right, self-defense, and target shooting which are protected Second Amendment conduct. The right to self-defense has a corresponding right to acquire and maintain proficiency with common weapons.

**ANSWER:** Defendant denies the allegations in this paragraph.

28.     A right to bear those weapons wouldn't mean much without the training and

practice that make them effective.

**ANSWER:** Defendant denies the allegations in this paragraph.

29.     Alternatively, suppressors are protected by the Second Amendment because they are protected firearm accessories.

**ANSWER:** Defendant denies the allegations in this paragraph.

30.     The Second Amendment secures the people a right not only to arms but also to accessories and proper accoutrements.

**ANSWER:** Defendant denies the allegations in this paragraph.

31.     <u>Suppressors are protected by the Second Amendment for the same reasons that ammunition and magazines are protected.</u>

**ANSWER:** Defendant denies the allegations in this paragraph.

32.     For the reasons provided, whether viewed as arms or accessories, suppressors are protected by the Second Amendment because they are in common use for lawful purposes.

**ANSWER:** Defendant denies the allegations in this paragraph.

33.     Hearing loss is a risk when training at a range due to the noise emitted by gunfire.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

34.     The American Speech-Language Hearing Association warns that "[e]xposure to noise greater than 140 dB can permanently damage hearing," and that "[a]lmost all firearms create noise that is over the 140-dB level." Michael Stewart, Recreational Firearm Noise Exposure, http://www.asha.org/public/hearing/Recreational-Firearm-Noise-Exposure/. As a result, people "can suffer a severe hearing loss with as little as one shot, if the conditions are right." *Id*. Other experts agree. Jay M. Bhatt, et al., Epidemiology of Firearm and Other Noise Exposures in the

United States,          The          Laryngoscope at          5,          available          at

http://onlinelibrary.wiley.com/doi/10.1002/lary.26540/epdf.

    **ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about

the allegations in this paragraph.

    35.     Hearing loss from even limited firearm use is a regular occurrence, "especially

during hunting season when hunters and bystanders may be exposed to rapid fire from big-bore

rifles, shotguns, or pistols." Stewart, Recreational Firearm Noise Exposure. Even a ".22-caliber

rifle can produce noise around 140 dB, while big-bore rifles and pistols can produce sound over

175 dB." *Id*. And firing guns at an indoor firing range, "where sounds can reverberate, or bounce

off walls and other structures, can make noises louder and increase the risk of hearing loss." *Id*.

    **ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about

the allegation in this paragraph**.**

    36.     Earplugs can be uncomfortable. It is reported that twenty percent of firearms users

never use hearing protection. Bhatt, at 5. And "[h]unters are even less likely to wear hearing

protection because they say they cannot hear approaching game or other noises." Stewart,

Recreational Firearm Noise Exposure.

    **ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about

the allegation in this paragraph.

    37.     Suppressors offer valuable benefits related to self-defense. Suppressors improve

accuracy by reducing recoil and also reduce hearing loss and disorientation after firing, which

could give a victim critical additional time to defend against an attack.  During a self-defense

situation, firing a firearm inside a home can deafen the shooter.  A suppressor allows for a

homeowner to maintain his or her senses (and his or her hearing) while defending him- or herself.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegation in this paragraph.

38.     There is a universal understanding that ""[e]xposure to noise greater than 140 dB [decibels] can permanently damage hearing,' according to Dr. Michael Stewart, Professor of Audiology at Central Michigan University. 'Almost all firearms create noise that is over the 140-dB level.'" Stephen P. Halbrook, Firearm Sound Moderators: Issues of Criminalization and the Second. Amendment, 46 Cumb. L. Rev. 33 (2015) at *1. "The National Institute for Occupational Safety and Health recommends that "hunters and shooters use double hearing protection every time a weapon is fired. Double protection involves wearing both earplugs and earmuffs." *Id*.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegation in this paragraph.

39.     But even the use of a single device makes it hard for a hunter to hear wildlife, and may inhibit one's ability to hear range commands, which can cause accidents." *Id* at *2. "A Finnish study on use of suppressors at rifle ranges showed that "[a]ll rifle suppressors reduced the shooter's exposure from the original 160 ± 3 decibels to below the EU risk limit 140 dB," and that "[i]f noise level decreases by 6 dB, distance to the neighbor can be halved."" *Id*. at *3 f.n, 17.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegation in this paragraph.

40.     Suppressors are owned both here and all around the world for self-defense, hunting and target shooting. *See Id*. at *44-*46 (listing the legality of suppressors use in many European countries). Here, all suppressors possessed under the NFA are for lawful use by law abiding citizens.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegation in this paragraph.

41.     In order to own a suppressor under the NFA, one has to register with the government, obtain permission of law enforcement, submit fingerprints, and pay a $200 tax.

**ANSWER:** Defendant admits the allegations in this paragraph.

42.     Target practice is why the first suppressor was designed. "The Maxim Silencer was developed to meet my personal desire to enjoy target practice without creating a disturbance," wrote Hiram Percy Maxim, inventor of the first successful firearm noise suppressor. *Id*. Given the number of states that allow civilian ownership of suppressors and that allow for hunting while using suppressors, it "indicates a broad recognition of legitimate uses of suppressors not only to protect one's hearing, but also for such purposes as reduction of loud noise that may disturb others or spook game." *Id* at *3. (Footnotes omitted). ""The situations where a group of hunted animals react by fleeing to the sound of a firearm being discharged is so universal to be axiomatic."" *Id* at *3 fn 18.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegation in this paragraph.

43.     Suppressors assist in this protected activity by reducing the decibels emitted by a firearm down to levels which do not hurt the ear. Similarly, suppressors assist in hunting by protecting hearing and by dampening the report of a firearm so that game are not scared away. These are the primary purposes of suppressors; therefore their typical use is for lawful purposes and they receive Second Amendment protection.

**ANSWER:** Defendant denies suppressors are protected by the Second Amendment. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in this paragraph**.**

44. In 2017, Ronald Turk, the Associate Deputy Director (Chief Operating Officer) of the ATF drafted a white paper that discussed various firearms-related issues. [FN2 https://s3.documentcloud.org/documents/3454608/Read-the-white-paper-on-firearms-regulations.pdf.]

**ANSWER:** Defendant denies suppressors are protected by the Second Amendment. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in this paragraph**.**

45. Mr. Turk's white paper discussed suppressors specifically, stating that "[i]n the past several years, opinions about silencers have changed across the United States. Their use to reduce noise at shooting ranges and applications within the sporting and hunting industry are now well recognized." *Id*. at 6.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations in this paragraph.

46. Mr. Turk further stated that "silencers are very rarely used in criminal shootings. Given the lack of criminality associated with silencers, it is reasonable to conclude that they should not be viewed as a threat to public safety necessitating NFA classification, and should be considered for reclassification under the [Gun Control Act]." *Id*.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

**c. State of Illinois Law.**

47.      Illinois bans "a device or attachment of any kind designed, used or intended for use in silencing the report of any firearm[.]" *See* 720 ILCS 5/24-1(a)(6).

**ANSWER:** Defendant admits 720 ILCS 5/24-1(a)(6) provides, "A person commits the offense of unlawful use of weapons when he knowingly . . . [p]ossesses any device or attachment of any kind designed, used or intended for use in silencing the report of any firearm[.]"

48.      As such, Illinois has a complete ban on the purchase, possession, hunting, self-defense usage, or any other type of usage of a suppressor in Illinois for an average, law-abiding Illinois citizen. Illinois' ban on suppressors lacks a plainly legitimate sweep.

**ANSWER:** Defendant denies the allegations in this paragraph.

49.      Illinois actively enforces this ban.

**ANSWER:** Defendant admits Illinois enforces its laws but denies Illinois has a complete ban as alleged in paragraphs 48 and 49.

50.      Possession of a suppressor in Illinois is a felony. "[A] person convicted of a violation of subsection 24-1(a)(6) or 24-1(a)(7)(ii) or (iii) commits a Class 3 felony." 720 Ill. Comp. Stat. Ann. 5/24-1 (LexisNexis, Lexis Advance through P.A. 102-1102, of the 2022 Regular Session of the 102nd Legislature).

**ANSWER:** Defendant admits 720 ILCS 5/24-1(b) provides in part that "a person convicted of a violation of subsection 24-1(a)(6) or 24-1(a)(7)(ii) or (iii) commits a Class 3 felony." Defendant denies the remaining allegations in this paragraph

**d. Plaintiff Theodore Ray Buck, Jr.**

51.      Plaintiff Theodore Ray Buck, Jr. ("Buck") desires to purchase a suppressor for

self- defense and other lawful purposes in the state of Illinois.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

52.     Plaintiff Buck has a Federal Firearm License ("FFL") in Illinois and is not a prohibited person. If Illinois allowed him to purchase and own a suppressor, he would apply to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for permission to own a suppressor, including paying the $200 transfer tax and subjecting himself to an invasive and lengthy background process.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

53.     But for Illinois law, Plaintiff Buck would be legally allowed to own a suppressor under federal law. Therefore, his desire to own a suppressor is redressable by this Court.

**ANSWER:** Defendant denies Plaintiff's asserted desire to own a suppressor is redressable by this Court. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

54.     But because Illinois bans suppressors for Buck to own and possess, he cannot apply for one, as the ATF cannot, by law, approve his transfer if it would place him in violation of any other law. *See* 26 U.S.C. § 5812(a) ("Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law."). As such, it is futile for him to even apply to the ATF.

**ANSWER:** Defendant admits Plaintiffs have accurately quoted 26 U.S.C. § 5812(a). Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph.

55.     But for Illinois law banning suppressors for citizens like him, he would purchase and possess a suppressor and use it for all lawful purposes, including shooting suppressed firearms at the target range because unsuppressed firearms are very loud.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph**.**

56.     In fact, Plaintiff Buck lives in the County and has used his land during target practice. Plaintiff Buck has been visited by the police for target shooting on his property, solely due to the noise from his target shooting. If he were able, Buck would target shoot with suppressed firearms, thus reducing the noise associated with target shooting on his own land and would not have to be weary of police showing up at his land due to noise complaints from neighbors.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

57.     Plaintiff Buck would also keep a suppressed firearm in his home, so that if he were ever required to use it indoors, he would not damage his hearing and would likely not have enough time to put ear protection on before he would have to use his firearm in self-defense at home.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

58.     But for Illinois' law, Plaintiff Buck would acquire and possess and use suppressors. *See* Verification of Buck, Exhibit "1."

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

**e.  Plaintiff Larry Morse.**

59.    Plaintiff Larry Morse ("Morse") desires to purchase a suppressor for self-defense and other lawful purposes in the state of Illinois. Plaintiff Morse is an honorably discharged Army veteran.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph**.**

60.    Morse has suffered hearing loss from his time in the Army, as when he served in the late 1960's, he was not always given proper hearing protection.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph**.**

61.    Due to his hearing loss, he intends to preserve the remainder of his hearing by doing all things possible to reduce the impact on his hearing from shooting firearms. As such, Morse wanted to purchase a suppressor, but Illinois makes it illegal to possess a suppressor for him.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph**.**

62.    Morse is also a firearms instructor and being able to shoot suppressed firearms during training would assist him in his training classes as it reduces the noise from shooting firearms.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph**.**

63.    Plaintiff Morse is not a prohibited person, and if Illinois allowed him to purchase and own a suppressor, he would apply to the ATF for permission to own a suppressor, including paying the $200 transfer tax and subjecting himself to an invasive and lengthy background

process.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

64.     But for Illinois law, Plaintiff Morse would be legally allowed to own a suppressor under federal law. Therefore, his desire to own a suppressor is redressable by this Court.

**ANSWER:** Defendant denies Plaintiff's alleged desire to own a suppressor is redressable by this Court. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

65.     But because Illinois bans suppressors for Morse to own and possess, he cannot apply for one, as the ATF cannot, by law, approve his transfer if it would place him in violation of any other law. *See* 26 U.S.C. § 5812(a) ("Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law."). As such, it is futile for Morse to even apply to ATF for a transfer of a suppressor.

**ANSWER:** Defendant admits Plaintiffs have accurately quoted 26 U.S.C. § 5812(a). Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in this paragraph.

66.     Plaintiff Morse also wants to keep a suppressed firearm in his home, so that if he were ever required to use it indoors, he would not further damage his hearing and as he would likely not have enough time to put ear protection on before he would have to use his firearm in self-defense at home.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph.

67.     But for Illinois' law, Plaintiff Morse would acquire and possess and use

suppressors. *See* Verification of Morse, Exhibit "2."

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in this paragraph**.**

## COUNT I

### U.S. CONST., AMEND. II, 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS

68.    The Defendants prohibit Plaintiffs from acquiring, possessing, and using a suppressor. As such it violates Plaintiffs' Second Amendment rights.

**ANSWER:** Defendant denies the allegations in this paragraph.

69.    Defendants' laws, customs, practices and policies generally banning the acquisition, possession, carrying and use of suppressors violates the Second Amendment to the United States Constitution, facially and as applied against the Plaintiffs in this action, damaging Plaintiffs in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to preliminary and permanent injunctive relief against such laws, customs, policies, and practices.

**ANSWER:** Defendant denies the allegations in this paragraph.

## COUNT II

### (DECLARATORY JUDGMENT)

70.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein.

**ANSWER:** Defendant repeats and realleges his answers for the preceding paragraphs for his answer to paragraph 81.

71.    The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of

any interested party seeking such declaration, whether or not further relief is or could be sought."
28 U.S.C. 2201(a).

**ANSWER:** Defendant admits the allegations in this paragraph.

72.      Absent a declaratory judgment, there is a substantial likelihood that Plaintiffs will suffer irreparable injury in the future.

**ANSWER:** Defendant denies the allegations in this paragraph.

73.      There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

**ANSWER:** Defendant denies the allegations in this paragraph.

74.      This Court possesses an independent basis for jurisdiction over the parties.

**ANSWER:** Defendant denies the allegations in this paragraph.

75.      A judgment declaring that Defendants' policy which denies Plaintiffs the right to own, possess and acquire firearms is unconstitutional as applied to them.

**ANSWER:** Defendant denies the allegations in this paragraph.

76.      Alternatively, a declaration that 720 ILCS 5/24-1(a)(6) and any other applicable law which prohibits Plaintiffs from owning suppressors as unconstitutional as applied to Plaintiffs.

**ANSWER:** Defendant denies the allegations in this paragraph.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.      An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who

receive actual notice of the injunction, from enforcing 720 ILCS 5/24-1(a)(6) and any other applicable law which prohibits Plaintiffs from owning and banning the acquisition, possession, carrying or use of suppressors;

**ANSWER:** Defendant denies Plaintiff is entitled to any relief whatsoever.

2.      An order declaring that 720 ILCS 5/24-1(a)(6) and any other applicable law which prohibits Plaintiffs from owning suppressors is unconstitutional and violates the Second Amendment to the United States Constitution;

**ANSWER:** Defendant denies Plaintiff is entitled to any relief whatsoever.

3.      An order declaring 720 ILCS 5/24-1(a)(6) and any other applicable law which prohibits Plaintiffs from owning suppressors unenforceable;

**ANSWER:** Defendant denies Plaintiff is entitled to any relief whatsoever.

4.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

**ANSWER:** Defendant denies Plaintiff is entitled to any relief whatsoever.

5.      Such other Declaratory relief consistent with the injunction as appropriate; and

**ANSWER:** Defendant denies Plaintiff is entitled to any relief whatsoever.

6.      Such other further relief as the Court deems just and appropriate.

**ANSWER:** Defendant denies Plaintiff is entitled to any relief whatsoever.

### AFFIRMATIVE DEFENSES

**1.   Qualified Immunity**

At all times relevant to Plaintiffs' claims, Defendant acted in good faith performance of his official duties without violating Plaintiff's clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Defendant is therefore protected from liability by the doctrine of qualified immunity.

### 2.   Sovereign Immunity

Plaintiffs' claims against the Attorney General in his official capacity are barred by the doctrine of sovereign immunity.

### 3.   Injunctive Relief Barred

To the extent Plaintiff is suing Defendant for declaratory relief or injunctive relief not intended to address ongoing violations, Plaintiff's requests for such relief are barred by the Eleventh Amendment and sovereign immunity.

### 4.   Eleventh Amendment Immunity

Plaintiffs' claims against the Attorney General in his official capacity are barred by the Eleventh Amendment.

WHEREFORE, Defendant, KWAME RAOUL in his Official Capacity as the Attorney General of Illinois, requests the Court deny Plaintiff's requested relief and enter judgment for Defendant.

Respectfully submitted,

KWAME RAOUL, in his official capacity as the Attorney General of Illinois,

Defendant,

KWAME RAOUL, Attorney General State of Illinois,

Thomas R. Ewick, #6279084
Martin Plute #6330296
Assistant Attorney General                    Attorneys for Defendant,
500 South Second Street
Springfield, Illinois 62706
(217) 782-2077 Phone                          By: /s/ Thomas R. Ewick
(217) 524-5091 Fax                                  Thomas R. Ewick, #6279084
Email: Thomas.Ewick@ilag.gov                        Assistant Attorney General
        gls@ilag.gov

Case No. 22-2740-DWD                                              Page 22 of 23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LARRY MORSE, | ) |
| THEODORE RAY BUCK, JR., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| -vs- | )          No. 22-cv-02740-DWD |
| | ) |
| KWAME RAOUL, in his official capacity | ) |
| as the Attorney General of Illinois, et al., | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2023, the foregoing document, *Answer and Affirmative Defenses*, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Alan Alexander Beck          alan.alexander.beck@gmail.com

Stephen Stamboulieh          stephen@sdslaw.us

James E. Godfrey, Jr.          jgodfrey@evans-dixon.com

Keith B. Hill          khill@heylroyster.com

Martin Plute          martin.plute@ilag.gov

And I hereby certify that on the same date, I caused a copy of the foregoing document to be mailed by United States Postal Service, to the following non-registered participant: None

Respectfully submitted,

s/ Thomas R. Ewick
Thomas R. Ewick, #6279084
Assistant Attorney General
500 South Second Street
Springfield, IL 62701
(217) 782-2077 Phone
(217) 782-8767 Fax
Email: Thomas.Ewick@ilag.gov