IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY MORSE and<br>THEODORE RAY BUCK, JR.,<br><br>        Plaintiffs,<br><br>v.<br><br>KWAME RAOUL et al.,<br><br>        Defendants. | No. 3:22-cv-02740-DWD |
| CARLIN ANDERSON and<br>DAVE CLARK,<br><br>        Plaintiffs,<br><br>v.<br><br>KWAME RAOUL et al.,<br><br>Defendants. | No. 3:23-cv-00728-DWD |

## MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants Kwame Raoul, Brendan F. Kelly, Craig Miller, and Bryan Robbins respectfully move the Court to enter judgment in their favor pursuant to Federal Rule of Civil Procedure 12(c). Plaintiffs raise a Second Amendment challenge to an Illinois law prohibiting the possession of silencers, which are attached to firearms to reduce the noise of gunfire. But the Second Amendment protects only "the right of the people to keep and bear *Arms*" (emphasis added). Silencers are not weapons. They are not used for self-defense. And they are not necessary to the effective use of a firearm. So they are not "Arms" within the meaning of the constitutional text, and thus plaintiffs cannot prevail on their Second Amendment claim.

1

## BACKGROUND

Illinois law prohibits the possession of silencers, defined as "any device or attachment of any kind designed, used or intended for use in silencing the report of any firearm." 720 ILCS 5/24-1(a)(6). Silencers are also regulated under federal law. Among other things, the National Firearms Act requires anyone who transfers a silencer to pay a $200 tax, complete an application that includes the transferee's fingerprints and photograph, and register the silencer in the transferee's name with the federal government. 26 U.S.C. §§ 5811, 5812(a), 5841(b), 5845(a)(7). It is a federal crime to possess any silencer that has been transferred in violation of these provisions or is not properly registered. *Id.* § 5861(b), (d).

Plaintiffs are four Illinois residents who wish to possess silencers (which they call suppressors). Carlin Anderson alleges he would like to "place a suppressor on every firearm he owns" in order "to increase safety and effectiveness in hunting and to protect against hearing damage." Complaint at 12, *Anderson v. Raoul*, No. 3:23-cv-00728-DWD (S.D. Ill. Feb. 27, 2023), ECF 1 ("*Anderson* Complaint"). Theodore Ray Buck, Jr. alleges he would like to use a suppressor when "target shooting on his property" so he "would not have to be [wary] of police showing up at his land due to noise complaints from neighbors." Complaint ¶ 56, *Morse v. Raoul*, No. 3:22-cv-02740-DWD (S.D. Ill. Feb. 9, 2023), ECF 42 ("*Morse* Complaint"). Dave Clark alleges he "regularly engages in hunting and participates in long-range rifle competitions" and "would use suppressors to increase safety and effectiveness in hunting and to protect against hearing damage." *Anderson* Complaint ¶ 48. And Larry Morse alleges he is a firearms instructor who "suffered hearing loss from his time in the Army" and would like "to shoot suppressed firearms during training [to] assist him in his training classes." *Morse* Complaint ¶¶ 60, 62.

Plaintiffs say these intentions are thwarted by the longstanding Illinois law prohibiting

possession of silencers. *See* 720 ILCS 5/24-1(a)(6). They contend this result runs afoul of the Second Amendment (as incorporated against the states by the Fourteenth Amendment). *Anderson* Complaint at 13-15; *Morse* Complaint ¶¶ 68-76. They seek declaratory and injunctive relief. *Anderson* Complaint at 15; *Morse* Complaint at 14. The Court recently found these cases present a common question of law and therefore consolidated them "in the interest of fairness, efficiency, and judicial economy." ECF 64; *Anderson* ECF 47.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). "To survive a motion for judgment on the pleadings (or a motion to dismiss), the complaint must 'state a claim to relief that is plausible on its face.'" *ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In assessing a motion for judgment on the pleadings, [courts] draw all reasonable inferences and facts in favor of the nonmovant, but need not accept as true any legal assertions." *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). Judgment on the pleadings is appropriate when a plaintiff's claim fails on a threshold question of law. *E.g., Cortez v. Cook Inc.*, 27 F.4th 563, 567 (7th Cir. 2022); *Mesa Labs., Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 867-69 (7th Cir. 2021); *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1095 (7th Cir. 2018).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." "In

interpreting this text, [courts] are guided by the principle that the Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning." *District of Columbia v. Heller*, 554 U.S. 570, 576 (2008) (cleaned up). Thus, the amendment "protect[s] an individual right to keep and bear arms for self-defense." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2125 (2022). And because this right is "among those fundamental rights necessary to our system of ordered liberty," it is enforceable against states like Illinois pursuant to the Due Process Clause of the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010).

The Supreme Court recently clarified the standard for evaluating Second Amendment claims. *See Bruen*, 142 S. Ct. at 2126, 2129-30. Courts "must first ask whether [the challenged law] governs conduct that falls within the plain text of the Second Amendment. Only if the answer is yes [should courts] proceed to ask whether [the challenged law] fits within America's historical tradition of firearm regulation." *United States v. Sitladeen*, 64 F.4th 978, 985 (8th Cir. 2023) (cleaned up); *see Atkinson v. Garland*, No. 22-1557, 2023 WL 4071542, at *1 (7th Cir. June 20, 2023); *Range v. Attorney General*, 69 F.4th 96, 101 (3d Cir. 2023); *Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1321 (11th Cir. 2023); *United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023) (all holding the same).

## ARGUMENT

The threshold issue here, as in every Second Amendment challenge, is whether the constitution's "plain text covers [plaintiffs'] conduct." *Bruen*, 142 S. Ct. at 2126, 2129-30. The Second Amendment protects "the right of the people to keep and bear *Arms*." U.S. Const. amend. II (emphasis added). Plaintiffs wish to possess silencers. *Anderson* Complaint at 12; *Morse* Complaint ¶¶ 51-67. So the question is: Does the Second Amendment cover this conduct? Or

4

more particularly: Are silencers "Arms" within the meaning of the constitutional text?

Every court to address this question has held silencers are not "Arms" protected by the Second Amendment. *See United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018); *Miller v. Garland*, No. 1:23-cv-195 (RDA/JFA), 2023 WL 3692841, at *10 (E.D. Va. May 26, 2023); *United States v. Villalobos*, No. 3:19-cr-00040-DCN, 2023 WL 3044770, at *11-*12 (D. Idaho Apr. 21, 2023); *United States v. Saleem*, No. 3:21-cr-00086-FDW-DSC, 2023 WL 2334417, at *8-*10 (W.D.N.C. Mar. 2, 2023); *United States v. Royce*, No. 1:22-cr-130, 2023 WL 2163677, at *4 (D.N.D. Feb. 22, 2023); *United States v. Al-Azhari*, No. 8:20-cr-206-T-60AEP, 2020 WL 7334512, at *3 (M.D. Fla. Dec. 14, 2020); *United States v. Hasson*, No. GJH-19-96, 2019 WL 4573424, at *4-*5 (D. Md. Sept. 20, 2019); *State v. Barrett*, 941 N.W.2d 866, 872-73 (Wis. App. 2020).

The reason is simple. When the Second Amendment was adopted in the late eighteenth century, dictionaries defined "Arms" to mean only "weapons of offence, or armour of defence"—or "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581 (cleaned up). While "[a]n instrument need not have existed at the time of the founding to fall within the amendment's ambit," it still "must fit the founding-era definition of an 'Arm[ ].'" *Cox*, 906 F.3d at 1186. But "[a] silencer is not itself used 'to cast at or strike another,' it does not contain, feed, or project ammunition, and it does not serve any intrinsic self-defense purpose." *Hasson*, 2019 WL 4573424, at *4. And while some people find silencers useful, they are not "'so critical' to firearm ownership that firearms cannot be used effectively without them." *Id.* at *5. Silencers are therefore not "Arms" within the original meaning of the constitutional text.

5

### A. Silencers Are Not "Arms."

Silencers are attached to firearms to reduce the noise (or report) caused by firing the weapon. *Anderson* Complaint ¶ 27; *Morse* Complaint ¶ 43. They help to mitigate some of the negative externalities potentially caused by loud gunfire, including hearing loss and "noise pollution." *Anderson* Complaint ¶¶ 35-39; *Morse* Complaint ¶¶ 33-43. But silencers do not eliminate these externalities because "suppressed gunshots are by no means 'silent.'" *Anderson* Complaint ¶ 42; *see Morse* Complaint ¶ 26 (same). And there are other ways to address any problems that may be caused by loud gunfire. *Anderson* Complaint ¶ 35 (noting "traditional forms of hearing protection like ear plugs or earmuffs"); *Morse* Complaint ¶ 38 (same).

To determine whether silencers are "Arms" protected by the Second Amendment, the Court must look to the original public meaning of the constitutional text. *Heller*, 554 U.S. at 576. That "meaning is fixed according to the understandings of those who ratified it." *Bruen*, 142 S. Ct. at 2132. And while the Second Amendment applies to "circumstances beyond those the Founders specifically anticipated," any such circumstances still must fall within the founding-era definition of "the right of the people to keep and bear Arms." *Id.* Put another way, "even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." *Id.*; *see Cox*, 906 F.3d at 1186 ("An instrument need not have existed at the time of the founding to fall within the amendment's ambit, but it must fit the founding-era definition of an 'Arm[ ].'").

*Heller* sets forth the original public meaning of the word "Arms" in the Second Amendment. 554 U.S. at 581; *see Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) (*Bruen* does not "decide anything about the kinds of weapons that people may possess"). "Arms" are "weapons of offence, or armour of defence." *Heller*, 554 U.S. at 581 (cleaned up). They include

6

"any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Id.* The founding-era definition of "Arms" is, in short, "no different from the meaning today." *Id.*; *see Saleem*, 2023 WL 2334417, at *8 ("Today, 'arms' are similarly defined as 'a means (such as a weapon) of offense or defense.'").

Silencers do not satisfy this definition of "Arms." "A silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence')." *Cox*, 906 F.3d at 1186. "A silencer is not itself used 'to cast at or strike another,' it does not contain, feed, or project ammunition, and it does not serve any intrinsic self-defense purpose." *Hasson*, 2019 WL 4573424, at *4. Simply put, "because [silencers] are not independently operable and do not serve any central self-defense purpose, [they] are not firearms within the meaning of the Second Amendment but are instead firearm accessories that fall outside its protection." *Saleem*, 2023 WL 2334417, at *9; *see Miller*, 2023 WL 3692841, at *10 ("courts have routinely held that a silencer is not a firearm because a silencer cannot cause harm on its own, it is 'not useful independent of its attachment to a firearm,' and 'a firearm remains an effective weapon without a silencer'").

It makes no difference that some federal statutes define the word "firearm" to include silencers. *See Anderson* Complaint ¶ 6 (citing 18 U.S.C. § 921(a)(3)(C) and 26 U.S.C. § 5845(a)(7)); *Morse* Complaint ¶ 17 (same). A statutory definition can, and often does, depart from a word's ordinary meaning. *E.g., Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020) ("The problem with this otherwise plausible argument is that Congress supplanted the ordinary meaning of 'government' with a different, express definition."). Some statutes define "state" to include Puerto Rico, for example, *see id.* (citing 15 U.S.C. § 267), but it does not follow that Puerto Rico is constitutionally entitled to representation in the Senate, *see* U.S. Const. art. I, § 3 ("Senate of the United States shall be composed of two Senators from each state"). Because "the

7

Constitution was written to be understood by the voters," the meaning of "its words and phrases" derives from their "normal and ordinary" usage at the time of ratification. *Heller*, 554 U.S. at 576. Congress's subsequent decision to supplant the ordinary meaning of a word in a particular statute neither alters nor informs the original meaning of that word in the constitutional text.

Besides, *Heller*'s definition of "Arms" remains binding. Even if plaintiffs could convince the Court that *Heller*'s reasoning has been undermined (it has not), "it is [the Supreme] Court's prerogative alone to overrule one of its precedents." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). Lower courts must continue to apply *Heller*'s definition of "Arms" until instructed otherwise. *See File v. Martin*, 33 F.4th 385, 392 (7th Cir. 2022).

Finally, plaintiffs are wrong to suggest *Bruen* departed from *Heller* by "defin[ing] 'arms' under the Second Amendment broadly with a 'general definition' that includes all 'modern instruments that facilitate armed self-defense.'" *Anderson* Complaint ¶ 6 (quoting *Bruen*, 142 S. Ct. at 2132); *see Morse* Complaint ¶ 11 ("The Second Amendment . . . <u>covers modern instruments that facilitate armed self-defense</u>."). Here is what *Bruen* actually says:

> We have already recognized in *Heller* at least one way in which the Second Amendment's historically fixed meaning applies to new circumstances: Its reference to "arms" does not apply "only [to] those arms in existence in the 18th century." 554 U.S. at 582. "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Ibid.* (citations omitted). Thus, even though the Second Amendment's definition of "arms" is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense. *Cf. Caetano v. Massachusetts*, 577 U.S. 411, 411-12 (2016) (per curiam) (stun guns).

142 S. Ct. at 2132. The phrase plaintiffs pluck out of context is not treading new ground. The (uncontroversial) point of this paragraph is that "the Second Amendment's historically fixed meaning applies to new circumstances." *Bruen*, 142 S. Ct. at 2132 (citing *Heller*, 554 U.S. at

582). And the (uncontroversial) point of its concluding sentence is to illustrate that principle by noting "stun guns" may satisfy the Second Amendment's definition of "Arms" even though they did not exist in 1791. *Id.* (citing *Caetano*, 577 U.S. at 411-12).

The paragraph is simply a summary of existing law. So it is the last place the Supreme Court would announce a *new* definition of "Arms" that "includes *all* 'modern instruments that facilitate armed self-defense.'" *Anderson* Complaint ¶ 6 (emphasis added). And in fact, it does not; what the court actually says is some "modern instruments that facilitate armed self-defense"—stun guns being an example—may be "weapons of offence" a person could "useth in wrath to cast at or strike another." These instruments satisfy *Heller*'s definition of "Arms" and are not disqualified from Second Amendment protection merely because they are modern—an argument *Heller* already rejected as "bordering on the frivolous." 554 U.S. at 582.

It would be a mistake to read anything more into this paragraph of *Bruen*. *See* 142 S. Ct. at 2157 (Alito, J., concurring) (*Bruen* does not "decide anything about the kinds of weapons that people may possess"). It would also run roughshod over Seventh Circuit precedent. That court frequently cautions "judicial opinions are not statutes" and therefore parties must "not take ambiguous statements for all they might be worth." *Vinning-El v. Evans*, 657 F.3d 591, 595 (7th Cir. 2011). Indeed, "it is a disservice to judges and a misunderstanding of the judicial process to wrench general language in an opinion out of context." *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1026 (7th Cir. 2006). "It is difficult to write a judicial opinion without making some general statements by way of background and explanation. But in a system of case law such statements can be misleading if carelessly lifted from the case-specific contexts in which they were originally uttered." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 866 (7th Cir. 1999); *see Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979) ("the language of an opinion

is not always to be parsed as though we were dealing with language of a statute"). Just so here.

### B.  Silencers Are Not Necessary to the Effective Use of "Arms."

For all these reasons, silencers are not "Arms" within the original meaning of the Second Amendment. Nor are they *necessary* to the effective use of such "Arms." "Individual self-defense is the central component of the Second Amendment right." *Bruen*, 142 S. Ct. at 2133 (cleaned up) (citing *McDonald*, 561 U.S. at 767, and *Heller*, 554 U.S. at 599). Courts of appeals have found the amendment also protects some unenumerated activity essential to the exercise of this core right. For example, "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use" because "the core right wouldn't mean much without the training and practice that make it effective." *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). And two courts of appeals have found "'the right to possess firearms for protection implies a corresponding right' to obtain the bullets necessary to use them" because "eliminating a person's ability to obtain or use ammunition could thereby make it impossible to use firearms for their core purpose" of self-defense. *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014); *see Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney General*, 910 F.3d 106, 116 (3d Cir. 2018) (same).

In both *Ezell* and *Jackson*, the courts grounded their conclusions firmly in *Heller*'s reasoning. The Seventh Circuit pointed to "[s]everal passages in *Heller* support[ing] [its] understanding" that range training is protected by the Second Amendment—particularly its citation to one nineteenth century treatise asserting "to bear arms implies something more than the mere keeping; it implies the learning to handle and use them" and another extolling those "citizen[s]" "who keep[ ] a gun or pistol under judicious precautions, practice[ ] in safe places the use of it, and in due time teach[ ] [their] sons to do the same." *Ezell*, 651 F.3d at 704 (cleaned

10

up) (quoting *Heller*, 554 U.S. at 617-19). The Ninth Circuit, for its part, noted "*Heller* did not differentiate between regulations governing ammunition and regulations governing the firearms themselves" but rather "considered the burden certain gunpowder-storage laws imposed on the Second Amendment right," which "would make little sense" unless those activities too were protected by the amendment. *Jackson*, 746 F.3d at 967-68 (citing *Heller*, 554 U.S. at 632).

Unlike range training and ammunition, silencers are not essential to the exercise of the core right to use "Arms" for self-defense. Once again, every court to address this question has agreed and held silencers therefore are unprotected by the Second Amendment. *See Saleem*, 2023 WL 2334417, at *10 ("The use of a silencer is in no way necessary to the effective use of a firearm—it certainly has benefits for the user, but unlike cleaning materials or bullets, a firearm can be used safely and effectively without a silencer."); *Hasson*, 2019 WL 4573424, at *5 ("Although silencers may improve the usage of a firearm, they are not necessary, and they are therefore not protected by the Second Amendment."); *Barrett*, 941 N.W.2d at 873 (even though there are some "activities which would be enhanced by silencer usage," there is "nothing about the use of silencers [that] is mandatory for effective firearm usage").

The result remains the same notwithstanding plaintiffs' allegations they would use silencers to assist in target practice and self-defense. *E.g.,* Anderson Complaint at 12; *Morse* Complaint ¶¶ 56-57, 62, 66. Defendants made similar arguments in *Saleem*, *Hasson*, and *Barrett*—and those arguments were roundly rejected. This is because "[a] firearm is effective as a weapon of self-defense without the use of a silencer." *Saleem*, 2023 WL 2334417, at *10; *see Hasson*, 2019 WL 4573424, at *5 ("a firearm remains an effective weapon without a silencer of any type attached"); *Barrett*, 941 N.W.2d at 873 (there is "no evidence suggesting that firearms cannot be effectively used without silencers"). At most, silencers may make it more convenient

to use a firearm. *See Saleem*, 2023 WL 2334417, at *10 (acknowledging "benefits for the user"); *Hasson*, 2019 WL 4573424, at *5 (acknowledging "silencers may improve the usage of a firearm"); *Barrett*, 941 N.W.2d at 873 (acknowledging some "activities which would be enhanced by silencer usage"). But mere inconvenience is insufficient to imply Second Amendment protection. *Saleem*, 2023 WL 2334417, at *10; *Hasson*, 2019 WL 4573424, at *5; *Barrett*, 941 N.W.2d at 873; *see Ezell v. City of Chicago*, 846 F.3d 888, 893 (7th Cir. 2017) (implied right protects activity that "lies close to the core of the individual right of armed defense"); *Jackson*, 746 F.3d at 967 (implied right protects activity that if restricted would "make it impossible to use firearms for their core purpose").

Plaintiffs' allegations show they are amply able to exercise their core Second Amendment right even in the face of the state law prohibiting the possession of silencers. Mr. Clark, for instance, "participates in long-range rifle competitions." *Anderson* Complaint ¶ 48. Mr. Morse is a firearms instructor. *Morse* Complaint ¶ 62. Mr. Anderson alleges he "does not *hunt* with a firearm" due to the state law, but he still owns multiple firearms and does not allege he has given up target practice. *Anderson* Complaint at 12 (emphasis added). Even Mr. Buck, who alleges he "has been visited by the police for target shooting on his property," does not allege this annoyance has caused him to stop shooting, much less his skills to atrophy. *Morse* Complaint ¶ 56. And none of the plaintiffs alleges he is unable to defend himself, in his home or elsewhere, because he is forbidden to attach a silencer to his firearm.

This is a far cry from the ammunition at issue in *Jackson*—or the range training at issue in *Ezell*. A firearm cannot be used for self-defense without ammunition—and it cannot effectively be used for self-defense without training and practice. The same is not true for a silencer; firearms are effective with or without them. And no court has held the Second

Amendment extends to every accessory or activity that makes it more pleasant to operate a firearm—an argument with no limiting principle that not only would threaten federal convictions under the National Firearms Act but also would expand the reach of the Second Amendment far beyond any other constitutional provision.

## CONCLUSION

Silencers are not "Arms" within the meaning of the Second Amendment's plain text. Nor are they necessary to the effective use of such "Arms" for self-defense. Thus, silencers are not protected by the Second Amendment. For all these reasons, Defendants Kwame Raoul, Brendan F. Kelly, Craig Miller, and Bryan Robbins respectfully move the Court to enter judgment in their favor pursuant to Federal Rule of Civil Procedure 12(c).

Dated: June 26, 2023

Respectfully submitted,

/s/ Darren Kinkead
Darren Kinkead, ARDC No. 6304847
Office of the Attorney General
100 West Randolph Street
Chicago, IL 60601
(773) 590-6967
Darren.Kinkead@ilag.gov

## CERTIFICATION

Pursuant to Local Rule 7.1(b), I certify a copy of this motion has been properly served upon each party to the action as required by the Federal Rules of Civil Procedure.

/s/ Darren Kinkead
Darren Kinkead, ARDC No. 6304847