IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY MORSE and<br>THEODORE RAY BUCK, JR.,<br><br>    Plaintiffs,<br><br>v.<br><br>KWAME RAOUL et al.,<br><br>    Defendants. | No. 3:22-cv-02740-DWD |
| CARLIN ANDERSON and<br>DAVE CLARK,<br><br>    Plaintiffs,<br><br>v.<br><br>KWAME RAOUL et al.,<br><br>    Defendants. | No. 3:23-cv-00728-DWD |

## MOTION TO STAY DISCOVERY

Defendants Kwame Raoul, Brendan F. Kelly, Craig Miller, and Bryan Robbins respectfully move the Court to stay discovery pending resolution of their motion for judgment on the pleadings filed earlier today. ECF 68. Plaintiffs raise a Second Amendment challenge to an Illinois law prohibiting possession of silencers, defined as "any device or attachment of any kind designed, used or intended for use in silencing the report of any firearm." 720 ILCS 5/24-1(a)(6). As explained in the motion for judgment on the pleadings, every other court to address this question of law has held silencers are not "Arms" protected by the Second Amendment. If the Court agrees, plaintiffs' actions may be dismissed without requiring any further investment of time or effort by the Court or parties.

1

The question whether silencers are "Arms" is therefore a threshold issue whose resolution in defendants' favor would significantly simplify this litigation and conserve judicial resources. And those savings could be substantial. If the Court determines silencers *are* "Arms," defendants must undertake an exhaustive survey of the historical record, aided by experts, to identify "relevantly similar" regulations that "evince[ ] a comparable tradition of regulation" to the state law prohibiting possession of silencers. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2131-32 (2022); *see, e.g., id.* at 2135 (evaluating "historical sources from the late 1200s to the early 1900s"); Response in Opposition to Motions for Preliminary Injunction, *Barnett v. Raoul*, No. 3:23-cv-00209-SPM (S.D. Ill. Mar. 2, 2023), ECFs 37-3 to 37-14 (multiple experts' testimony in separate Second Amendment challenge to state's assault weapons law).

This work will take time and be expensive, not only because of its immense scope, but also because it will require engaging experts who are in short supply. *See* Shawn Hubler, *In the Gun Law Fights of 2023, a Need for Experts on the Weapons of 1791*, N.Y. TIMES (Mar. 14, 2023), https://www.nytimes.com/2023/03/14/us/gun-law-1791-supreme-court.html. Indeed, the Seventh Circuit recently recognized "the historical analysis required by *Bruen* will be difficult" and "is certain to prove most challenging." *Atkinson v. Garland*, No. 22-1557, 2023 WL 4071542, at *2, *5 (7th Cir. June 20, 2023). And it will be for naught if the Court agrees with the unanimous authorities and holds silencers are not "Arms" protected by the Second Amendment. The Court should therefore stay discovery pending resolution of defendants' motion for judgment on the pleadings raising this potentially dispositive threshold issue.

## LEGAL STANDARD

"District courts have broad discretion to control discovery, including the power to issue a stay in appropriate circumstances." *McClaine v. DX Enters., Inc.*, No. 23-cv-1168-DWD, 2023

WL 3726729, at *1 (S.D. Ill. May 30, 2023). "To determine whether a stay is necessary, courts consider '(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party.'" *Kuklinski v. Binance Capital Mgmt. Co.*, No. 21-cv-01425-SPM, 2022 WL 3018427, at *1 (S.D. Ill. July 29, 2022). "Discovery can be stayed in the interest of preserving 'time and effort' for the Court and the parties." *Chandler v. Zinus, Inc.*, No. 20-cv-265-RJD, 2020 WL 12846610, at *1 (S.D. Ill. Sept. 10, 2020). A stay is appropriate where a "party raises a potentially dispositive threshold issue" and "expensive discovery" looms. *Alexander v. Take-Two Interactive Software, Inc.*, No. 3:18-CV-966-SMY-MAB, 2019 WL 2176321, at *1 (S.D. Ill. May 20, 2019). Further, in actions like these that "involve a common question of law or fact, the court may: . . . issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a)(3).

## ARGUMENT

### A. The Question Whether Silencers Are "Arms" Is a Potentially Dispositive Threshold Issue that Could Obviate the Need for Expensive Discovery.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear *Arms*, shall not be infringed" (emphasis added). The Supreme Court recently clarified the standard for evaluating Second Amendment claims. *See Bruen*, 142 S. Ct. at 2126, 2129-30. Courts "must first ask whether [the challenged law] governs conduct that falls within the plain text of the Second Amendment. Only if the answer is yes [should courts] proceed to ask whether [the challenged law] fits within America's historical tradition of firearm regulation." *United States v. Sitladeen*, 64 F.4th 978, 985 (8th Cir. 2023) (cleaned up); *see Atkinson*, 2023 WL 4071542, at *1; *Range v. Attorney General*, 69 F.4th 96, 101 (3d Cir. 2023); *Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1321 (11th

3

Cir. 2023); *United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023) (all holding the same).

As explained in defendants' motion for judgment on the pleadings, every court to consider a Second Amendment challenge to a restriction on possessing silencers has resolved the argument at the first step. Possessing a silencer is not conduct that falls within the plain text of the Second Amendment, these courts hold, because silencers are not "Arms" as that word was originally understood. *See United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018); *Miller v. Garland*, No. 1:23-cv-195 (RDA/JFA), 2023 WL 3692841, at *10 (E.D. Va. May 26, 2023); *United States v. Villalobos*, No. 3:19-cr-00040-DCN, 2023 WL 3044770, at *11-*12 (D. Idaho Apr. 21, 2023); *United States v. Saleem*, No. 3:21-cr-00086-FDW-DSC, 2023 WL 2334417, at *8-*10 (W.D.N.C. Mar. 2, 2023); *United States v. Royce*, No. 1:22-cr-130, 2023 WL 2163677, at *4 (D.N.D. Feb. 22, 2023); *United States v. Al-Azhari*, No. 8:20-cr-206-T-60AEP, 2020 WL 7334512, at *3 (M.D. Fla. Dec. 14, 2020); *United States v. Hasson*, No. GJH-19-96, 2019 WL 4573424, at *4-*5 (D. Md. Sept. 20, 2019); *State v. Barrett*, 941 N.W.2d 866, 872-73 (Wis. App. 2020). And because these courts found the Second Amendment was inapplicable, there was no need to ask whether the challenged laws fit within our historical tradition of firearm regulation.

The question whether silencers are "Arms" is therefore a potentially dispositive threshold issue. For this reason alone, a discovery stay is warranted. *See, e.g., McClaine*, 2023 WL 3726729, at *1 ("a stay of discovery is generally only appropriate when a party raises a potentially dispositive threshold issue"); *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion 'is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.'").

But there are additional reasons to justify relief stemming from the disproportionate

burdens required to resolve the threshold issue—whether silencers are "Arms"—and the ensuing issue the Court and parties must confront if (but only if) the answer is "they are"—"whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation" to the state law prohibiting possession of silencers. *Bruen*, 142 S. Ct. at 2131-32. The first issue, as discussed, is a question of law already addressed by numerous courts; it therefore requires no record development. The second issue, by contrast, necessitates an exhaustive survey of the historical record. And that inquiry would have to start from scratch; to defendants' knowledge, it has not been undertaken in any other case even though silencers have been restricted by other states and the federal government for nearly a century.

The Seventh Circuit recently addressed the type of "historical analysis" that "would satisfy the demanding standard set forth in *Bruen*." *Atkinson*, 2023 WL 4071542, at *1. The plaintiff there raised a Second Amendment challenge to a federal statute forbidding felons to possess firearms. *Id.* The Seventh Circuit admonished both sides for offering historical analysis that "falls well short of *Bruen*'s demands" and therefore "return[ed] the case to the district court for a proper, fulsome analysis of the historical tradition supporting" the challenged statute. *Id.* at *3-*4. The Seventh Circuit instructed the parties on remand to keep in mind "what the [Supreme] Court itself did in *Bruen* after rejecting a means-end approach and announcing the text-and-history standard—it rolled up its sleeves and examined a wealth of laws and commentary spanning several centuries, paying close attention to the enforcement and impact of various regulations." *Id.* at *3; *see also id.* at *4-*5 (setting forth five "interrelated and non-exhaustive questions [to] help focus the proper analysis on remand"). And perhaps because the Seventh Circuit recognized "the historical analysis required by *Bruen* will be difficult" and "is certain to prove most challenging for the lower courts," it suggested "[b]oth sides should cast a

5

wider net and provide more detail about whatever history they rely on" and "the district court may accept amicus briefs to assist with its inquiry." *Id.* at *2, *5.

As the Seventh Circuit's opinion in *Atkinson* makes clear, *Bruen* requires an exhaustive analysis of our nation's historical tradition whenever a statute regulates conduct that falls within the plain text of the Second Amendment. This analysis will require defendants (and likely plaintiffs and amici too) to engage expensive experts whose time is already in short supply. As another district court observed in confronting a post-*Bruen* Second Amendment challenge, while judges may not be historians, they do "have the ability to receive evidence and rely on that evidence to find facts that support the legal reasoning and lead to conclusions." *Ocean State Tactical, LLC v. Rhode Island*, No. 22-CV-246 JJM-PAS, 2022 WL 17721175, at *6 (D.R.I. Dec. 14, 2022). What's more, district courts lack the research resources of the Supreme Court to consult ancient tomes and conduct their own historical surveys. *Id*. For these reasons, it is helpful when the parties "retain[ ] expert historians to inform the Court's factfinding" regarding our country's historical tradition of firearm regulation. *Id.* at *7. That is precisely what the state did, for example, in defending recent challenges to restrictions on assault weapons and large capacity ammunition feeding devices. *See* Response in Opposition to Motions for Preliminary Injunction, *Barnett v. Raoul*, No. 3:23-cv-00209-SPM (S.D. Ill. Mar. 2, 2023), ECFs 37-3 to 37-14 (declarations from experts in history, law enforcement, firearms, and other fields).

But this sort of expertise carries a significant cost. *E.g.,* Declaration of James E. Yurgealitis ¶¶ 1-3, *Barnett v. Raoul*, No. 3:23-cv-00209-SPM (S.D. Ill. Mar. 2, 2023), ECF 37-9 (firearms expert engaged at $400+ per hour); Declaration of Robert J. Spitzer ¶¶ 1-3, *Barnett v. Raoul*, No. 3:23-cv-00209-SPM (S.D. Ill. Mar. 2, 2023), ECF 37-11 (historian engaged at $500+ per hour). Further, many relevant experts are "booked solid" amid "an explosion of legal

challenges to gun laws" post-*Bruen* "and a scramble by government lawyers to find historically analogous regulations in centuries-old traditions and statutes." Shawn Hubler, *In the Gun Law Fights of 2023, a Need for Experts on the Weapons of 1791*, N.Y. TIMES (Mar. 14, 2023), https://www.nytimes.com/2023/03/14/us/gun-law-1791-supreme-court.html. And in holding the parties' historical analysis in *Atkinson* was "nothing close to what would satisfy the demanding standard set forth in *Bruen*," the Seventh Circuit's recent opinion is likely to intensify the scramble. 2023 WL 4071542, at *3. All told, the law of supply and demand suggests examining "this Nation's historical tradition of firearm regulation" has never been a more expensive endeavor. *Bruen*, 142 S. Ct. at 2126.

To be sure, defendants are confident they could, if necessary, identify "relevantly similar" analogues for the state's longstanding restrictions on silencers. *Bruen*, 142 S. Ct. at 2132. And they specifically reserve the right to do so if the Court disagrees with the unanimous authorities cited above and holds silencers are "Arms" after all. But the cost of developing this record, at this time, far exceeds its expected value to the Court given the weight of the caselaw. There is strong reason to believe plaintiffs' claims can be resolved at the first step—because silencers are not "Arms" protected by the Second Amendment—and therefore it will be unnecessary to inquire whether laws restricting their use are "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

**B.    A Discovery Stay Is Justified by Each of the Relevant Factors.**

For these reasons, a discovery stay is justified by each of the three factors courts consider in evaluating such requests—"'(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the nonmoving

7

party.'" *Kuklinski*, 2022 WL 3018427, at *1. First, "a stay of discovery will simplify the issues" when a pending motion "has potential to dispose of certain claims brought by [plaintiffs], making discovery unnecessary, or, at least narrowing its scope." *Rodriguez v. Ford Motor Co.*, No. 21 C 2553, 2022 WL 704780, at *2 (N.D. Ill. Mar. 9, 2022). That is clearly the case here. Whether silencers are "Arms" is, as shown, a threshold issue raised by defendants' motion for judgment on the pleadings that all courts have resolved in their favor. *See Hardimon v. SCF Lewis & Clark Fleeting LLC*, No. 21-cv-298-RJD, 2022 WL 1104738, at *3 (S.D. Ill. Apr. 13, 2022) ("courts have recognized the appropriateness of a stay where the motion to dismiss can resolve the case"). And if this Court follows suit, there will be no need to engage in expensive discovery on historical analogues to the challenged law prohibiting possession of silencers. *See Atkinson*, 2023 WL 4071542, at *5 (recognizing "the historical analysis required by *Bruen* will be difficult" but instructing "[b]oth sides [to] cast a wider net and provide more detail about whatever history they rely on"); *Chandler*, 2020 WL 12846610, at *1 (staying discovery pending resolution of class certification motions because "discovery for a putative nationwide class action suit will involve significantly more time and expense").

For similar reasons, a discovery stay will also reduce the burden of litigation on the Court and parties. *See Atkinson*, 2023 WL 4071542, at *2 (acknowledging *Bruen*'s requirement "to interpret and define the relevant body of regulatory history" justifying firearm regulations "is certain to prove most challenging for the lower courts"); *Rodriguez*, 2022 WL 704780, at *2 ("stay will reduce the burden on the parties" because ruling on motion to dismiss "could greatly affect the cost and scope of discovery"). As explained, all courts to consider Second Amendment challenges to silencer restrictions have resolved them in favor of the challenged laws, without requiring discovery. *See Johnson v. Farmers New World Life Ins. Co.*, No. 21-cv-02573-DDD-

KLM, 2022 WL 19567992, at *2 (D. Colo. June 21, 2022) (staying discovery pending motion to dismiss because "experts may need to be consulted" and these "[s]ignificant costs" will "place[ ] a significant burden on Defendants"). Given the weight of the caselaw, there is a meaningful chance plaintiffs' challenge too will be resolved on this simple textual question—and burdensome discovery will never become necessary. *See Rodriguez*, 2022 WL 704780, at *1 ("without taking any position as to the merits of [defendant's] arguments for dismissal, the fact that the issues raised could potentially be dispositive weighs in favor of staying discovery"). This is a perfect storm of circumstances favoring a stay. *See Soares v. Meeks*, No. 3:21-cv-00057-RLY-MPB, 2021 WL 5748438, at *3 (S.D. Ind. Oct. 4, 2021) ("A discovery stay will conserve parties' resources while the court is considering the motion to dismiss.").

      Finally, a discovery stay will not unduly prejudice or tactically disadvantage plaintiffs. The issue presented by defendants' motion for judgment on the pleadings—whether silencers are "Arms" within the meaning of the Second Amendment—is a straightforward question of law that can be briefed and resolved relatively quickly. "[W]hile a stay necessarily slows the progression of a case, a short delay on its own does not constitute undue prejudice." *Nat'l Police Ass'n, Inc. v. Gannett Co.*, No. 1:21-cv-01116-TWP-DLP, 2021 WL 5364207 (S.D. Ind. Oct. 25, 2021). Indeed, when the pending motion presents a potentially dispositive threshold issue, as defendants' motion does here, "a small delay in discovery while awaiting adjudication of the motion is reasonable." *In re Clearview AI, Inc. Consumer Privacy Litig.*, No. 21 C 135, 2021 WL 5862495, at *2 (N.D. Ill. Aug. 31, 2021).

      As for tactical disadvantage, "[c]ourts typically find [none] when a stay is sought in the early stages of litigation before much discovery." *Knauf Insulation, LLC v. Johns Manville Corp.*, No. 1:15-cv-00111-WTL-MJD, 2015 WL 7084079, at *3 (S.D. Ind. Nov. 13, 2015). That

9

is certainly the case here. Defendants filed their answer in the *Anderson* action just last week, ECF 67, and no discovery has taken place. And although some discovery has taken place in the *Morse* action, the "matter is still in its early stages." ECF 60; *see* ECF 66 (parties' stipulation to extend some discovery deadlines). On top of this, the discovery defendants seek to stay primarily concerns the development of expert opinions based on archival materials not in the possession of any party. Thus, there is little chance a stay will exacerbate any concerns about misplaced documents or fading memories.

## CONCLUSION

Defendants' motion for judgment on the pleadings raises the potentially dispositive threshold issue of whether silencers are "Arms" within the meaning of the Second Amendment. Every court to consider the question has held they are not. And if this Court agrees, there will be no need to engage in the expensive and expansive expert discovery necessary to determine "whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation" to the state law prohibiting possession of silencers, *Bruen*, 142 S. Ct. at 2131-32—an analysis the Seventh Circuit recently recognized "will be difficult" and "is certain to prove most challenging for the lower courts." *Atkinson*, 2023 WL 4071542, at *2, *5. For all these reasons, Defendants Kwame Raoul, Brendan F. Kelly, Craig Miller, and Bryan Robbins respectfully move the Court to stay discovery pending resolution of their motion for judgment on the pleadings.

Dated: June 26, 2023                                     Respectfully submitted,

 /s/ Darren Kinkead
Darren Kinkead, ARDC No. 6304847
Office of the Attorney General
100 West Randolph Street
Chicago, IL 60601
(773) 590-6967
Darren.Kinkead@ilag.gov

**CERTIFICATION**

Pursuant to Local Rule 7.1(b), I certify a copy of this motion has been properly served upon each party to the action as required by the Federal Rules of Civil Procedure.

 /s/ Darren Kinkead
Darren Kinkead, ARDC No. 6304847