IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LARRY MORSE and THEODORE RAY BUCK, JR. | ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 3:22-cv-02740-DWD |
| v. | ) ) | |
| KWAME RAOUL in his Official Capacity as the Attorney General of Illinois, et al. | ) ) ) | |
| Defendants. | ) ) ) | |

| | | |
|---|---|---|
| CARLIN ANDERSON and DAVE CLARK | ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 3:23-cv-00728-DWD |
| v. | ) ) | |
| KWAME RAOUL, et al., | ) ) | |
| Defendants. | ) ) ) | |

### PLAINTIFFS' RESPONSE TO DEFENDANT KWAME RAOUL'S MOTION TO STAY DISCOVERY

NOW COME Plaintiffs Larry Morse and Theodore Ray Buck, Jr., by and through counsel, and respond to Defendant Kwame Raoul's Motion to Stay Discovery as follows:

As an initial matter, Plaintiffs do not oppose Defendant Raoul's request to stay discovery. However, because Defendant Raoul seeks to have this Court rule on his Motion for Judgment on the Pleadings during the pendency of the requested stay, Defendant Raoul probably means to request adjournment of all deadlines, rather than simply stay discovery. Even a stay of discovery would necessarily impact this Court's Scheduling Order as Plaintiffs' expert submissions are now due on July 24, 2023 and briefing on Defendant

Raoul's Motion for Judgment on the Pleadings would not even be complete by that day.

Plaintiffs will address the remainder of the merits argument about why a suppressor is protected in their response, but will point out in this pleading that Defendant Raoul claims that "[t]he first issue ... is a question of law already addressed by numerous courts; it therefore requires no record development[]" (Mot. at 5) but then in the next breath claims that the inquiry necessary to answer "'whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation' to the state law prohibiting possession of silencers" would have to "start from scratch" because "it has not been undertaken in any other case..." *Id*.

And relying on a handful of cases for the proposition that since some courts have said suppressors are not "arms," all other courts should agree is disingenuous, especially when the Defendant admits that an analysis has not yet been performed. Other problems abound with cases cited by Defendant. For instance, in *Miller v. Garland*, Civil Action No. 1:23-cv-195 (RDA/JFA), 2023 U.S. Dist. LEXIS 93105, at *31 (E.D. Va. May 26, 2023), that court stated that "[l]ike a silencer, a stabilizing brace cannot cause harm on its own, is not useful independent of its attachment to a firearm, and a firearm remains an effective weapon without a brace."

The *Miller* court's logic is an overly simplistic analysis which, should it find traction, would allow government to ban anything and everything that are not literally firearms. For example, a firearm can fire (once) without its detachable magazine, and can fire without any type of sights (which cannot cause harm on their own, and are not useful independent of their attachment to a firearm). Ironically *Miller* entirely ignores the Supreme Court's decision in *U.S. v. Miller*, 307 U.S. 174, 181–82 (1939), which explained

2

that "arms" also includes "ordinary military equipment," as shown in the court's reference to founding era statutes that required militia members to be armed not only with firearms but also other "proper accoutrements" such as "a good bayonet and iron ramrod … a cartridge box … a good knapsack and canteen," and "Belt, a Pouch with a Box therein to contain not less than Twenty-four Cartridges … a proper Quantity of Powder and Ball, two spare Flints, a Blanket and Knapsack." If the word "arms" includes a belt, then it includes a suppressor.

And other courts have held that things that are not actually firearms can receive protection by the Second Amendment. *See Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 967 (9th Cir. 2014)) ("The Second Amendment protects 'arms,' 'weapons,' and 'firearms'; it does not explicitly protect ammunition. Nevertheless, without bullets, the right to bear arms would be meaningless.") *See also Teixeira v. Cty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (citing *Ezell v. City of Chi.*, 651 F.3d 684, 704 (7th Cir. 2011)) ("*As with purchasing ammunition* and maintaining proficiency in firearms use, the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms.") (emphasis added); *Bezet v. United States*, 276 F. Supp. 3d 576, 605 (E.D. La. 2017) (restrictions on "the use of imported parts to assemble a firearm . . . likely impinge on the rights of law-abiding, responsible citizens . . . to acquire" firearms) (emphasis added), *aff'd*, 714 F. App'x 336 (5th Cir. 2017); *Andrews v. State*, 50 Tenn. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair.")

And in a case that should have been cited, not for the work and expense put into it

3

by the Defendant, but for the holding, *see Barnett v. Raoul*, No. 3:23-cv-00209-SPM, 2023 U.S. Dist. LEXIS 74756, (S.D. Ill. Apr. 28, 2023). Judge McGlynn stated that "Defendants' contention that 'non-essential accessories' [a shroud attached to the barrel, flash suppressor, or arm brace] are not within the scope of the Second Amendment's plain text[]" ... "is not persuasive." *Id*. at *25-26. "Therefore, because the 'meaningful exercise' of the right to armed self-defense is wholly dependent on the ability of citizens to utilize their arms and hit their intended target, *items that aid in accuracy may be considered 'arms' and are presumptively protected by the Second Amendment.*" *Id*. at *30 (emphasis added).[1] And Judge McGlynn also agreed that "magazines are 'arms' as used in the plain text of the Second Amendment." *Id*. at *27.

In any event, Plaintiffs do not oppose Defendant Raoul's request to stay discovery, however, instead of staying discovery, this Court should adjourn all current deadlines to give the Court enough time to rule on Defendant Raoul's Motion for Judgment on the Pleadings, and if this Court denies Defendant Raoul's Motion, then the Court can reset the deadlines at that time.

Dated: June 28, 2023.

Respectfully submitted,

| | |
|---|---|
| */s/Stephen D. Stamboulieh* | Alan Alexander Beck |
| Stamboulieh Law, PLLC | Law Office of Alan Beck |
| P.O. Box 428 | 2692 Harcourt Drive |
| Olive Branch, MS 38654 | San Diego, CA 92123 |
| (601) 852-3440 | (619) 905-9105 |
| stephen@sdslaw.us | Alan.alexander.beck@gmail.com |
| MS Bar No. 102784 | *Counsel for Plaintiffs* |

---

[1] *See* ¶ 37 from Second Amended Complaint (ECF# 42), *"[s]uppressors improve accuracy* by reducing recoil and also reduce hearing loss and disorientation after firing, which could give a victim critical additional time to defend against an attack." (emphasis added).

## CERTIFICATE OF SERVICE

      I, Stephen D. Stamboulieh, counsel for Plaintiff, hereby certify that on this day, I have caused to be filed the foregoing document or pleading with the District Court's ECF which sent a notice and a copy of the foregoing to all counsel of record.

Dated:  June 28, 2023.

                                                                                 /s/ *Stephen D. Stamboulieh*
                                                                                 Stephen D. Stamboulieh