IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY MORSE, et al. et al.,<br><br>    *Plaintiffs*,<br>v.<br>KWAME RAOUL, et al.,<br>    *Defendants*. | )<br>)<br>)<br>)  CIVIL ACTION NO.<br>)  3:22-cv-02740-DWD<br>)<br>)<br>)<br>) |
| CARLIN ANDERSON, et al.,<br><br>    *Plaintiffs*,<br>v.<br>KWAME RAOUL, et al.,<br>    *Defendants*. | )<br>)<br>)<br>)  CIVIL ACTION NO.<br>)  3:23-cv-00728-DWD<br>)<br>)<br>)<br>) |

### ***ANDERSON* PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STAY DISCOVERY**

Plaintiffs Carlin Anderson and Dave Clark, by and through their undersigned counsel, respectfully submit this response to Defendant Kwame Raoul's Motion to Stay Discovery:

These consolidated cases challenge the constitutionality of Illinois' ban on suppressors under the Second and Fourteenth Amendments to the United States Constitution. *See* 720 ILCS 5/24-1(a)(6). Illinois moved for judgment on the pleadings, arguing that suppressors are not "arms" within the meaning of the Second Amendment, *see* Mot. for Judgment on the Pleadings, Doc. 68 (June 26, 2023), and simultaneously requested a stay of discovery while that motion is litigated, Mot. to Stay Disc., Doc. 69 (Jun 26, 2023) ("Mot."). Two days later, Plaintiffs in the *Morse* case responded, noting that they do not oppose a stay of discovery and further requesting that all deadlines in the case be suspended pending the outcome of the motion for judgment on the

1

pleadings. *See Morse* Pls.' Resp. to Def.'s Mot. to Stay at 4, Doc. 70 (June 28, 2023). Plaintiffs in the *Anderson* case now respond in kind.

Like the *Morse* Plaintiffs, the *Anderson* Plaintiffs do not oppose the State's motion to stay discovery pending resolution of the State's motion for judgment on the pleadings. Under *Bruen*, the first question to be addressed in any Second Amendment challenge is this: does the text of the Second Amendment cover the activity in question (here, possession of commonly owned and used suppressors)? *New York State Rifle & Pistol Ass'n Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022). Though Plaintiffs disagree with the State over *how* this question ought to be answered—an issue Plaintiffs will take up fully in their response in opposition to the State's motion—Plaintiffs agree that resolving this question will streamline the case, reduce the burden of litigation on the parties and the court, and not unduly prejudice or tactically disadvantage plaintiffs. *See In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012) (describing standard governing decision to stay a case).

The State emphasizes in its motion that if the Court finds suppressors are presumptively protected by the Second Amendment and denies the motion for judgment on the pleadings, the State will bear the burden of justifying its law under "the demanding standard set forth in *Bruen*." Mot. at 5 (quoting *Atkinson v. Garland*, 70 F.4th 1018, 2023 WL 4071542, at *3 (7th Cir. 2023)). Here again, Plaintiffs agree, and they grant that, if and when the Court rejects the State's motion for judgment on the pleadings, it will be appropriate to provide the State sufficient time to attempt to justify the ban through briefing. Plaintiffs disagree, however, that answering the historical question posed by this case will require the State "to engage expensive experts whose time is already in short supply." Mot. at 6.

In fact, there is no need at all to engage an expert on the historical issue in this case. The historical laws and evidence on which the constitutionality of the challenged laws rests are a species of "legislative facts" or general facts about the world that transcend the immediate activities of the parties and "have relevance to legal reasoning . . . in the formulation of a legal principle or ruling by a judge or court." Fed. R. Evid. 201, Advisory Committee's Notes on 1972 Proposed Rules, Subdivision (a). They stand in contrast to more typical "adjudicative facts" or "facts concerning the immediate parties—who did what, where, when, how, and with what motive or intent." *Id.*; *see also Frank v. Walker*, 768 F.3d 744, 750 (7th Cir. 2014) (Posner, J., dissenting from denial of reh'g en banc) ("The concept of legislative facts comes into its own when there is no reason to believe that certain facts pertinent to a case vary from locality to locality, or from person to person.").

The Federal Rules of Evidence do not govern the Court's consideration of legislative facts, which is unbounded. Fed. R. Evid. 201, Advisory Committee's Notes on 1972 Proposed Rules, Subdivision (a). ("[T]he judge is unrestricted in his investigation and conclusion."). Such facts are frequently presented to the Court directly in the briefs of the parties, *see Wiesmueller v. Kosobucki*, 547 F.3d 740, 742 (7th Cir. 2008), which are free to cite facts outside of the "record," found in "documents not prepared specially for litigation or refined in its fires." *Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1182 (7th Cir. 1990). There is no requirement that such facts be presented through experts.

The State's claim that it requires significant expert discovery is belied by the Supreme Court's Second Amendment cases. In *District of Columbia v. Heller,* for example, for the proposition that handguns are "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," the Court cited not to expert testimony developed in the

3

district court (there was none) but relied on the D.C. Circuit's decision below. 554 U.S. 570, 628–29 (2008). The D.C. Circuit, in turn, had likewise eschewed reliance on a "record"—the court was sitting in review of a judgment granting a motion to dismiss, after all—but had supported this conclusion by citing directly to a social science paper. *See Parker v. Dist. of Columbia*, 478 F.3d 370, 400 (D.C. Cir. 2007) (citing Gary Kleck & Marc Gertz, *Armed Resistance to Crime: The Prevalence & Nature of Self-Defense with a Gun*, 86 J. CRIM. L. & CRIMINOLOGY 150 (1995)). In fact, in *Heller* the Court declined to grant the Department of Justice's request to build out portions of the record that purportedly were lacking—including "whether, and to what extent, long guns provide a functionally adequate alternative to handguns for self-defense in the home," preferring to consider such issues itself based on the parties' and *amici*'s briefs. *See* Amicus Br. for the United States of America at 31 n.9, *District of Columbia v. Heller*, 554 U.S. 570 (Jan. 11, 2008)(No. 07-290).

In his *Caetano v. Massachusetts* concurrence, Justice Alito quoted a Michigan Court of Appeals decision for the proposition that "hundreds of thousands of Tasers and stun guns have been sold to private citizens." 577 U.S. 411, 420 (2016) (Alito, J., concurring) (cleaned up). That decision based its conclusion on a law review article which, in turn, relied on "a newspaper article from 1985." *See People v. Yanna*, 824 N.W.2d 241, 245 n.5 (Mich. Ct. App. 2012). And *Bruen* is no different. In *Bruen* there was *no* district court record—the district court had entered judgment on the pleadings because Bruen's claims were foreclosed by circuit precedent when the complaint was filed. *See New York State Rifle & Pistol Ass'n, Inc. v. Beach*, 354 F. Supp. 3d 143 (N.D.N.Y. 2018). In holding that New York's may-issue licensing scheme violated the Second Amendment, the Supreme Court expressly rejected the argument that it could not "answer the question presented without giving respondents the opportunity to develop an evidentiary record" relating to the

operation of New York's law. *Bruen*, 142 S. Ct. at 2135 n.8. "[I]n light of the text of the Second Amendment, along with the Nation's history of firearm regulation," the conclusion "that a State may not prevent law-abiding citizens from publicly carrying handguns because they have not demonstrated a special need for self-defense" could be adequately addressed through the parties' briefs. *Id.*

The State suggests that what is good for the Supreme Court is not for this Court, however, because "district courts lack the research resources of the Supreme Court to consult ancient tomes and conduct their own historical surveys," so historical expert testimony will be required. Mot. at 6. But while district courts are free, when considering legislative facts, to do their own research, there is no *requirement* that they do so, and the Supreme Court was clear in *Bruen* that courts can and should rely upon the parties to present the historical evidence. *Bruen*, 142 S. Ct. at 2130 n.6. In explaining the relative responsibilities of the litigants and the courts, *Bruen* was also clear that the historical evidence is part-and-parcel of the *legal* work this Court must do to resolve this case. *Bruen*, 142 S. Ct. at 2130 n.6. And there is no reason why the fundamentally *legal* argument the State must make needs to depend on experts, when the same tools that were used by the Supreme Court—the parties' briefs and potential *amicus* participation—are available here. *See Atkinson*, 2023 WL 4071542, at *5 ("[T]he district court may accept amicus briefs to assist with its inquiry."); Mot. at 6 (same).

## CONCLUSION

Plaintiffs do not oppose the State's request to stay discovery pending resolution of the motion for judgment on the pleadings.

July 10, 2023                                               Respectfully submitted,

/s/ David H. Thompson
David H. Thompson*

5

David G. Sigale (Atty. ID# 6238103)  
LAW FIRM OF DAVID G. SIGALE, P.C.  
430 West Roosevelt Road  
Wheaton, Illinois 60187  
630.452.4547  
dsigale@sigalelaw.com  

Peter A. Patterson*  
Athanasia O. Livas*  
COOPER & KIRK, PLLC  
1523 New Hampshire Avenue, N.W.  
Washington, D.C. 20036  
(202) 220-9600  
dthompson@cooperkirk.com  
ppatterson@cooperkirk.com  
alivas@cooperkirk.com  

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2023, I cause the foregoing to be filed using the CM/ECF system, which will send notification of such filing to counsel of record, who are registered CM/ECF participants.

/s/ David H. Thompson
David H. Thompson