**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LARRY MORSE and THEODORE RAY BUCK, JR. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 3:22-cv-02740-DWD |
| KWAME RAOUL in his Official Capacity as the Attorney General of Illinois, et al. | ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| CARLIN ANDERSON and DAVE CLARK | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 3:23-cv-00728-DWD |
| KWAME RAOUL, et al., | ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT KWAME RAOUL'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Introduction

The Defendant's ("the State") terse interpretation of the Second Amendment runs contrary to existing precedent and how constitutional rights are typically interpreted. First, suppressors[1] are "firearms" because Congress said they are. Second, suppressors are protected arms because they facilitate armed self-defense. However, even if this Court finds otherwise, suppressors are nonetheless protected by the Second Amendment because they are firearm accessories. And firearm accessories that assist with self-defense and other

---

[1] Plaintiffs use the terms suppressors and silencers interchangeably throughout this brief.

protected conduct are protected by the Second Amendment. As such, Defendant's Motion for Judgment on the Pleadings is not well taken and should be denied.

<u>Standard of Review</u>

"A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991). A "court[] grant[s] a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *N. Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). A court may not grant a motion to dismiss for failure to state a claim "even if it strikes a savvy judge that . . . recovery is very remote and unlikely," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citation omitted). "So long as the pleadings suggest a 'plausible' scenario to 'sho[w] that the pleader is entitled to relief,' a court may not dismiss," *Tooley v. Napolitano*, 556 F.3d 836, 839, 384 U.S. App. D.C. 393 (D.C. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). As such, "the district court may only grant the motion if it is beyond doubt that the non-movant can plead no facts that would support his claim for relief... The district court may not look beyond the pleadings, and all uncontested allegations to which the parties had an opportunity to respond are taken as true." *Wood*, 925 F.2d at 1581 (citations omitted). But, the court may consider "documents incorporated by reference to the pleadings" and may "take judicial notice of matters of public record." *Id*. at 1582. "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452.

I.     <u>Suppressors Are Arms</u>

The scope of "the Second Amendment's definition of 'arms'" is restricted neither to "only those arms in existence in the 18th century" nor to only those arms that the government deems necessary for self-defense. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S.Ct. 2111, 2132 (2022); *Dist. of Columbia v. Heller,* 554 U.S. 570, 582 (2008). Rather, "the Second Amendment's definition of 'arms'" covers all "modern instruments that facilitate armed self-defense," "'even those that were not in existence at the time of the founding,'" regardless of whether they are strictly "necessary" for self-defense. *Bruen,* 142 S.Ct. at 2132 (citation omitted); *see Caetano v. Massachusetts,* 577 U.S. 411, 411-12 (2016) (stun guns). In short, "[t]he 18th-century meaning is no different from the meaning today…. '[A]rms' [means] 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'" *Heller*, 554 U.S. at 581. All bearable instruments that facilitate armed self-defense are covered, even if they are not independently capable of warding off an assailant. *Bruen* at 2132.  The threshold textual inquiry does not ask what is "necessary" for self-defense; it asks whether a bearable instrument "facilitate[s] armed self defense." *Id.*

The National Firearms Act defines "firearm" to include "silencer" (26 U.S.C. § 5845(a)) and the Gun Control Act likewise defines "firearm" to be "any firearm muffler or firearm silencer."  18 U.S.C. § 921(a)(3).  Under these statutes, silencers are per se "arms." And this Court must apply the statutory definition of "silencer" to be a "firearm" because "[w]hen a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning."  *Dig. Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 776-77 (2018) (punctuation and citation omitted).

In any event, suppressors are plainly "thing[s]" that citizens carry for use in and facilitate self-defense. Suppressors are an important part a firearm because they help to mitigate some of the negative externalities potentially caused by loud gunfire, including hearing loss and "noise pollution." "It is well-established that sounds above 140 dBA can cause permanent hearing damage, and nearly all firearms can surpass this level."[2] Even a ".22-caliber rifle can produce noise around 140 dB, while big-bore rifles and pistols can produce sound over 175 dB." *See Michael Stewart, Recreational Firearm Noise Exposure,* http://www.asha.org/public/hearing/Recreational-Firearm-Noise-Exposure. *See also* Compl. at ¶¶34-35 (discussing hearing loss). Hearing loss is worse inside an enclosed area like the bedroom of one's home because the noise has nowhere to travel. *Id*. ("Firing guns in a place where sounds can reverberate, or bounce off walls and other structures, can make noises louder and increase the risk of hearing loss.") This can leave a person temporarily deafened and less able to defend themselves in a self-defense situation. E.g., a person shooting inside their bedroom can be deafened by the use of a firearm.

A suppressor is the best way to deal with this issue.  It is unrealistic to expect a person to take the time to put on hearing protection while his home is being broken into. And even if he did, wearing hearing protection takes away from a person's ability to hear external threats during a break in. On the other hand, a suppressor can be attached to a firearm in preparation for home defense and it only reduces the noise from the firearm. Thus, a suppressor is part of a firearm and facilitates armed self-defense. This means they are "arms" within the context of the Second Amendment.

---

[2] Jay M. Bhatt, et al., *Epidemiology of Firearm and Other Noise Exposures in the United States*, The Laryngoscope (2017), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6067011/.

The State argues that only parts of a firearm which are "necessary" to the use of a firearm are protected.  If that argument were to be taken to its logical extreme, then magazines of all sorts would be entirely unprotected by the Second Amendment. "[A] firearm can fire bullets without a detachable magazine." *See Ocean State Tactical, LLC v. Rhode Island*, 2022 U.S. Dist. LEXIS 227097, at *30 (D.R.I. Dec. 14, 2022).[3] Therefore, magazines are not absolutely necessary to the use of a firearm. There is no serious argument that magazines are entirely removed from Second Amendment protection. *See e.g. Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 331, 670 F.3d 1244, 1261 (2011) finding magazines are arms. *See also New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015); *see also Barnett v. Raoul*, 2023 U.S. Dist. LEXIS 74756, at *27 (S.D. Ill. Apr. 28, 2023) ("This Court agrees that magazines are 'arms' as used in the plain text of the Second Amendment. Plaintiffs are correct that '[t]his is not even a close call.'"). And a firearm can fire without any type of sights, so by Defendant's logic, government can ban firearm sights without infringing on the Second Amendment.

The term "arms" encompasses the constituent parts that make an "arm" function as intended such as a suppressor. The State's analysis makes particularly little sense because Illinois law bans suppressors which can integrally be part of a rifle or a handgun. This means the suppressor is built in as part of the rifle or handgun and cannot be removed. Illinois law thus, makes these rifles and handguns illegal to own in Illinois. *See e.g.* https://www.swsrifles.com/ (website of one company that sells rifles with the suppressor build into the rifle) and   https://www.silencershop.com/silencerco-maxim-9.html

_____

[3] The Court presumably meant a person can fire a firearm by chambering the round manually through the breech.

(integrally suppressed handgun). An item that is literally part of a protected arm, is obviously an arm, not an accessory. And nothing in law or logic supports the notion that a component integral to the functioning of a mechanical object ceases to be integral just because engineers figure out how to make it detachable.

The State's argument ultimately boils down to the idea that suppressors are not "Arms" because a firearm does not need a suppressor to be used. That has absolutely nothing to do with the test the Supreme Court has articulated for what qualifies as an "arm," which asks not what is "necessary" for self-defense, but simply whether something "facilitate[s] armed self-defense." *Bruen* at 2132; *see also Heller* at 635 (teaching that the Second Amendment leaves to "the people," not the government, the choice of how best to defend themselves).

Silencers improve accuracy by reducing recoil and also reduce hearing loss and disorientation after firing, which could give a victim critical additional time to defend against an attack. *See* A.J. Peterman, *Second Amendment Decision Rules, Non-Lethal Weapons, and Self-Defense*, 97 Marq. L. Rev. 853, 892 n.221 (2014). *See* also ¶ 37 from Second Amended Complaint (ECF# 42) (""Suppressors improve accuracy by reducing recoil and also reduce hearing loss and disorientation after firing, which could give a victim critical additional time to defend against an attack." (emphasis added)."). "Defendants' contention that 'non-essential accessories' [a shroud attached to the barrel, flash suppressor, or arm brace] are not within the scope of the Second Amendment's plain text[]" ... "is not persuasive." *Barnett v. Raoul,* No. 3:23-cv-00209-SPM, 2023 U.S. Dist. LEXIS 74756, *25-26 (S.D. Ill. Apr. 28, 2023). "Therefore, because the 'meaningful exercise' of the right to armed self-defense is wholly dependent on the ability of citizens to utilize their

arms and hit their intended target, *items that aid in accuracy may be considered 'arms' and are presumptively protected by the Second Amendment.*" *Id.* at *30 (emphasis added). Suppressors are arms protected by the Second Amendment.

A. Plaintiffs Morse and Buck are Normal, Law-Abiding Individuals and Part of the People to Which the Second Amendment Protects

Defendant does not question whether Morse or Buck are part of "the People" whom the Second Amendment protects, (*see Bruen* at 2134, discussing petitioners in *Bruen*), but in any event, Plaintiffs refer this Court back to the Verified Second Amended Complaint, which sets forth the allegations that both Plaintiffs are law-abiding and both swear that they wish to own, use and possess suppressors for, *inter alia*, self-defense. *See* Verified Second Amended Complaint ¶¶51-67. To be sure, Defendant states that suppressors "are not used for self-defense[,]" (Mot. at 1), but Plaintiffs' Verified Amended Complaint avers that the Plaintiffs seek to use suppressors for self-defense.

B. Suppressors Are Typically Possessed For Lawful Purposes

Although modern suppressors of the sort at issue here were invented long after the Second Amendment was ratified, the Amendment "'extends . . . to . . . arms . . . that were not in existence at the time of the founding.'" *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (quoting *Heller*, 554 U.S. at 582).

*Heller* holds there is a presumption that arms are constitutionally protected, and the burden is on the government to rebut that presumption. "*Heller* emphasizes that 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms.' *Heller*, 554 U.S. at 582. In other words, it identifies a presumption in favor of Second Amendment protection, which the State bears the initial burden of rebutting." *See New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 257 (2d Cir. 2015). Therefore, the

7

burden is on the government to prove that suppressors are not protected by the Second Amendment. Here, the State has done nothing to try and rebut that presumption. Therefore, if this Court finds that suppressors are arms, then it must also find that they are in common use for lawful purposes. However, even without that presumption, suppressors are in common use for lawful purposes.

There are 2,666,774 suppressors owned by law abiding citizens through the National Firearms Act ("NFA") as of 2021.[4] And that is despite legal impediments to owning a silencer, including the National Firearms Act requirements—paying a $200 transfer tax, submitting a detailed application and fingerprints, and a multi months-long wait for the federal government to process the application. *See* 26 U.S.C. § 5811. Even arms that are far less common have been found to be protected.

In *Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027, 1032-33 (2016), Justice Alito stated the following in his concurring opinion:

> "The more relevant statistic is that '[h]undreds of thousands of Tasers and stun guns have been sold to private citizens,' who it appears may lawfully possess them in 45 States. *People* v. *Yanna*, 297 Mich. App. 137, 144, 824 N. W. 2d 241, 245 (2012) (holding Michigan stun gun ban unconstitutional); see Volokh, Nonlethal Self-Defense, (Almost Entirely) Nonlethal Weapons, and the Rights To Keep and Bear Arms and Defend Life, 62 Stan. L. Rev. 199, 244 (2009) (citing stun gun bans in seven States); Wis. Stat. §941.295 (Supp. 2015) (amended Wisconsin law permitting stun gun possession); see also Brief in Opposition 11 (acknowledging that 'approximately 200,000 civilians owned stun guns' as of 2009)."

The Southern District of New York found nunchucks to be protected arms despite the Plaintiffs only being able to prove "64,890 nunchakus" in civilian hands. *Maloney v.*

---

[4] *See* https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download (Firearms Commerce in the United States, Annual Statistical Update 2021).

*Singas*, 351 F. Supp. 3d 222, 237-38 (E.D.N.Y. 2018).  A federal court even struck down a ban on flash suppressors, holding that such a ban violates the Second Amendment. *Murphy v. Guerrero,* No. 1:14-CV-00026, 2016 U.S. Dist. LEXIS 135684, *88 (D. N. Mar. I. Sep. 28, 2016) (unpublished). The court understood flash suppressors to be much like suppressors—an attachment to the front barrel "which attaches to the front barrel of the rifle [and] reduces noise and potentially increases accuracy."  *Murphy*, at *65. "We think it clear enough in the record that semi-automatic rifles and magazines holding more than ten rounds are indeed in 'common use,' as the plaintiffs contend. Approximately 1.6 million AR-15s alone have been manufactured since 1986, and in 2007 this one popular model accounted for 5.5 percent of all firearms, and 14.4 percent of all rifles, produced in the U.S. for the domestic market." *Heller v. District of Columbia*, 399 U.S. App. D.C. 314, 331 (2011).

Suppressors are typically used for lawful purposes[5] and are "very rarely used in criminal shootings."[6]  Suppressors do not completely silence firearms or enable criminals

---

[5] Lawfully owned suppressors, approved by the ATF, are per se <u>only</u> lawfully owned because 1) criminals don't register their weapons and thus, the ATF will not have it registered in the national database (the NFRTR) as a lawfully owned suppressor and, 2) 26 U.S.C. § 5812 states that "Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law."  This leaves us with the proposition that over 2.5 million suppressors are lawfully owned for lawful purposes by law-abiding citizens, because if this were not the case, the ATF would not approve the transfer.

[6] See *Options to Reduce or Modify Firearms Regulations*, Ronald Turk, Associate Deputy Director of ATF, p.6.  https://s3.documentcloud.org/documents/3454608/Read-the-white-paper-on-firearms-regulations.pdf.   "In the past several years, opinions about silencers have changed across the United States.  Their use to reduce noise at shooting ranges and applications within the sporting and hunting industry are now well recognized.  At present, 42 states generally allow silencers to be used for sporting purposes.  The wide acceptance of silencers and corresponding changes in state laws have created substantial demand across the country… While DOJ and ATF have historically not supported removal of items

using firearms to go undetected when they would otherwise be heard. *See* Nathan Rott,

Debate   Over   Silencers:   Hearing   Protection   or   Public   Safety   Threat?,

http://www.npr.org/2017/03/21/520953793/debate-over-silencers-hearing-protection-or-

public-safety-threat (comparing the sound of four different firearms with and without a

silencer); *see also*, David Kopel, The Hearing Protection Act and 'silencers', Washington

Post,        https://www.washingtonpost.com/news/volokh-conspiracy/wp/2017/06/19/the-

hearing-protection-act-and-silencers/.   Thus, this Court should find that suppressors are

constitutionally protected arms and thus, deny Defendant's Motion.  But even if this Court

finds suppressors are not "arms", they are still protected by the Second Amendment.

  C.  <u>The Second Amendment Protects Firearm Accessories</u>

   Even if this Court finds that suppressors are not arms, it should still find that

ownership of suppressors is protected by the Second Amendment.  That is because,

alternatively, suppressors are firearm accessories and firearm accessories are protected by

the Second Amendment.  In *United States v. Miller*, 307 U.S. 174 (1939), the Supreme

Court recognized that the "Arms" the people had the right to keep and bear were not strictly

limited to firearms but included "ordinary military equipment" such as ammunition,

---

from the NFA, the change in public acceptance of silencers arguably indicates that the
reason for their inclusion in the NFA is archaic and historical reluctance to removing them
from the NFA should be reevaluated.  ATF's experience with the criminal use of silencers
also supports reassessing their inclusion in the NFA.  On average in the past 10 years, ATF
has only recommended 44 defendants a year for prosecution on silencer-related violations;
of those, only approximately 6 of the defendants had prior felony convictions.  Moreover,
consistent with this low number of prosecution referrals, silencers are very rarely used in
criminal shootings.  Given the lack of criminality associated with silencers, it is reasonable
to conclude that they should not be viewed as a threat to public safety necessitating NFA
classification, and should be considered for reclassification under the GCA."  *See also*
Compl. ¶¶44-46 (discussing white paper).

bayonets and iron ramrods fitted on the firearm's barrel, and other "proper accoutrements." 307 U.S. at 180-82. *See also Andrews v. State*, 50 Tenn. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair."); *see also Bezet v. United States*, 276 F. Supp. 3d 576, 605 (E.D. La. 2017) (restrictions on "the use of imported parts to assemble a firearm . . . likely impinge on the rights of law-abiding, responsible citizens . . . to acquire" firearms) (emphasis added), *aff'd*, 714 F. App'x 336 (5th Cir. 2017)   Therefore, firearm accessories are protected by the Second Amendment because they are accoutrements which aid in and assist in Second Amendment protected conduct such as self-defense, training, and hunting. W*ilson v. Cook County*, 937 F.3d 1028, 1032 (7th Cir. 2019) (*quoting Ezell*, 651 F.3d at 708) ("The Seventh Circuit has recognized the Second Amendment as extending to 'corollar[ies] to the meaningful exercise of the core right to possess firearms for self-defense.'").

   D. <u>The Second Amendment Right Includes Hunting and Training</u>

   The "core" protected lawful purpose protected by the Second Amendment may be self-defense, but that is not the only protected lawful purpose. *Heller*, 554 U.S. at 630. The Second Amendment also protects the right to hunt with arms and train in their proficiency with arms.

   *Heller* recognized that the Second Amendment protects the keeping and bearing of arms for the purpose of hunting. *See id.* at 588-89 (referencing the right to bear arms for the purpose of killing game); *id.* at 599 ("The prefatory clause does not suggest that preserving the militia was the only reason Americans valued the ancient right; most

undoubtedly thought it even more important for self-defense and hunting."); *see also Heller II*, 670 F.3d at 1260 ("[T]he Second Amendment protects the right to keep and bear arms for other lawful purposes, such as hunting . . ." (punctuation omitted)). This is consistent with the original understanding of the amendment. *See Heller*, 554 U.S. at 606-07 (noting that St. George Tucker's early American edition of Blackstone's Commentaries stated that English game laws abridged the right of the people to keep and bear arms by prohibiting "keeping a gun or other engine for the destruction of game").

The Seventh and Third Circuits have already found target shooting/firearm ranges are protected by the Second Amendment. The right to self-defense "implies a corresponding right to acquire and maintain proficiency" with common weapons. *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) [hereinafter *Ezell I*]. A right to bear those weapons, after all, "wouldn't mean much without the training and practice that make [them] effective.'" *Drummond v. Robinson Twp.*, 2021 U.S. App. LEXIS 24511, at *12-13 (3d Cir. Aug. 17, 2021). The plain text of the Second Amendment protects firearms accessories which aid in target shooting, hunting and self-defense because the right to arms protects a corresponding right to firearms accessories which aid in or facilitate those aforementioned activities.

E.   Suppressors Assist in Hunting, Target Shooting and Self-Defense

Suppressors facilitate self-defense, firearms training and hunting. Hearing loss is a risk when shooting due to the noise emitted by gunfire. *See City and County of Denver v. Moore*, 504 P. 2d 367, 369 - Colo: Court of Appeals, 2nd Div. (1972) ("loss of hearing is the result of repeated monthly exposures at the firing range ... acoustic trauma which caused the injury was a result of exposure at the firing range once a month"). The American

12

Speech-Language Hearing Association warns that "[e]xposure to noise greater than 140 dB can permanently damage hearing," and that "[a]lmost all firearms create noise that is over the 140-dB level." Michael Stewart, *Recreational Firearm Noise Exposure*, http://www.asha.org/public/hearing/Recreational-Firearm-Noise-Exposure/.

As a result, people "can suffer a severe hearing loss with as little as one shot, if the conditions are right." *Id.* Other experts agree. Jay M. Bhatt, et al., *Epidemiology of Firearm and Other Noise Exposures in the United States*, The Laryngoscope at 5, *available at* http://onlinelibrary.wiley.com/doi/10.1002/lary.26540/epdf. Hearing loss from even limited firearm use is a regular occurrence, "especially during hunting season when hunters and bystanders may be exposed to rapid fire from big-bore rifles, shotguns, or pistols." Stewart, Recreational Firearm Noise Exposure. Even a ".22-caliber rifle can produce noise around 140 dB, while big-bore rifles and pistols can produce sound over 175 dB." *Id.* And firing guns at an indoor firing range, "where sounds can reverberate, or bounce off walls and other structures, can make noises louder and increase the risk of hearing loss." *Id.* Earplugs can be uncomfortable. It is reported that twenty percent of firearms users never use hearing protection. Bhatt, at 5. And "[h]unters are even less likely to wear hearing protection because they say they cannot hear approaching game or other noises." Stewart, Recreational Firearm Noise Exposure

Suppressors offer valuable benefits related to self-defense. Suppressors improve accuracy by reducing recoil and also reduce hearing loss and disorientation after firing, which could give a victim critical additional time to defend against an attack. *See* A.J. Peterman, Second Amendment Decision Rules, Non-Lethal Weapons, and Self-Defense, 97 Marq. L. Rev. 853, 892 n.221 (2014). During a self-defense situation, firing a firearm

inside a home can deafen the shooter.  A suppressor allows for a homeowner to maintain his or her senses (and his or her hearing) while defending him- or herself.

"The National Institute for Occupational Safety and Health recommends that "hunters and shooters use double hearing protection every time a weapon is fired. Double protection involves wearing both earplugs and earmuffs." Stephen P. Halbrook, Firearm Sound Moderators: Issues of Criminalization and the Second. Amendment, 46 Cumb. L. Rev. 33 (2015) at *1. But even the use of a single device makes it hard for a hunter to hear wildlife, and may inhibit one's ability to hear range commands, which can cause accidents." *Id* at *2. "A Finnish study on use of suppressors at rifle ranges showed that "[a]ll rifle suppressors reduced the shooter's exposure from the original $160 \pm 3$ decibels to below the EU risk limit 140 dB," and that "[i]f noise level decreases by 6 dB, distance to the neighbor can be halved."" *Id*. at *3 fn 17.

Suppressors are owned both here and all around the world for self-defense, hunting and target shooting. *See Id*. at *44-*46 (listing the legality of suppressors use in many European countries).  Here, all suppressors possessed under the NFA are for lawful use by law abiding citizens.  In order to own a suppressor under the NFA, one has to "register with the government, obtain permission of law enforcement, submit fingerprints, and pay a $200 tax". *Id* at 3.  Target practice is why the first suppressor was designed. "The Maxim Silencer was developed to meet my personal desire to enjoy target practice without creating a disturbance," wrote Hiram Percy Maxim, inventor of the first successful firearm noise suppressor. *Id*.  Given the number of states that allow civilian ownership of suppressors and that allow for hunting while using suppressors, it "indicates a broad recognition of legitimate uses of suppressors not only to protect one's hearing, but also for such purposes

14

as reduction of loud noise that may disturb others or spook game." *Id* at *3. (Footnotes omitted). ""The situations where a group of hunted animals react by fleeing to the sound of a firearm being discharged is so universal to be axiomatic."" *Id* at *3 fn 18. Suppressors assist in this protected activity by reducing the decibels emitted by a firearm down to levels which do not hurt the ear. Similarly, suppressors assist in hunting by protecting hearing and by dampening the report of a firearm so that game are not scared away. Thus, suppressors aid in training, hunting and self-defense.

F. <u>Hearing Protection is Necessary to Use Firearms Safely</u>

As established above, hearing protection is necessary for training with firearms. And pursuant to *Ezell I*, training is part of the Second Amendment right. "The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Ezell I at* 704. Thus, even assuming the State's position is correct and only accessories which are necessary to the use of a firearm is protected by the Second Amendment, suppressors are still protected. That is because hearing protection is necessary for the use of firearms. Thus, hearing protection as a class is protected by the Second Amendment. To find otherwise would allow the State to ban the ownership of ear plugs and headphones if it wanted to further discourage the Second Amendment right because neither are necessary to the actual functioning of a firearm. Once the idea that hearing protection is protected, *Heller* supports the proposition that individuals have the right to choose the form of hearing protection they use. *Heller* rejected the idea that handguns could be banned if long arms were legal. "It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of

15

other firearms (*i.e.*, long guns) is allowed." *District of Columbia v. Heller*, 554 U.S. 570, 629, 128 S. Ct. 2783, 2818 (2008).

In *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) the Ninth Circuit reviewed a ban on the sale of hollow point ammunition in the City of San Francisco. *Id* at 967. It expressly found that hollow point ammunition is not necessary to the use of firearms because other ammunition is available. "A ban on the sale of certain types of ammunition does not prevent the use of handguns or other weapons in self-defense." *Id* at 968. Despite that, it found San Francisco's ban implicated constitutionally protected conduct. *Id* at 968. It so because "without bullets, the right to bear arms would be meaningless." *Id* at 967. Similarly, just because other forms of hearing protection are available does not mean suppressors as a type of hearing protection do not receive Second Amendment protection. This Court should find that hearing protection are firearms accessories protected by the Second Amendment. And suppressors as a type of firearm hearing protection is protected by the Second Amendment.

G.   Accessories Do not Need to Be Mandatory to the Use of an Arm to be Protected by the Second Amendment

The State misapplies this Circuit's precedent and the Ninth Circuit's holding in *Jackson* to conclude that something must be necessary to the use of an arm to be protected by the Second Amendment. Nothing in the Ninth Circuit's opinion holds ***only*** items which are necessary to the use of a firearm are protected by the Second Amendment. Similarly, *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney General*, 910 F.3d 106, 116 (3d Cir. 2018) which the State also relies on simply holds that magazines are an arm. This supports Plaintiffs primary argument above which is suppressors are arms. However, it does nothing

16

for the State's position that assuming suppressors are not arms, they do not receive constitutional protection.

The State also misapplies the 7th Circuit's holding in *Ezell I*. In *Ezell I*, the Seventh Circuit invalidated a Chicago ordinance that prohibited all firing ranges despite Chicago also mandating firing-range training as a prerequisite to lawful gun ownership. *Id* at 691. The Seventh Circuit reasoned that shooting ranges are not "categorically unprotected by the Second Amendment" because "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Id.* at 704.

The 7th Circuit revisited Chicago's gun range laws in *Ezell v. City of Chi.*, 846 F.3d 888 (7th Cir. 2017) ("*Ezell II*"). "The majority opinion reaches conclusions on three matters, the constitutionality of limiting firing ranges to manufacturing districts (the zoning regulation), the constitutionality of requiring firing ranges to be located more than a certain distance from other specific uses (the distancing regulation), and the constitutionality of a ban on minors at firing ranges. The majority finds all three to be unconstitutional." *Id.* at 899 (Rovner, J., dissenting).  It certainly is not necessary to use a firearm to have a firearm range within a nonmanufacturing district (i.e., a residential district).  However, the 7th Circuit still found having firearm ranges in residential district is part of the Second Amendment right. Therefore, even if this Court finds that suppressors are firearm accessories and that they are not necessary to the use of a firearm, this Court should still find that suppressors are protected by the Second Amendment.

The State relies on a series of cases which deal with suppressors. These Court's holdings are simply wrong or distinguishable.  The 10th Circuit's opinion in *Cox* simply is

incorrect. There the Court found that "because silencers are not "bearable arms," they fall outside the Second Amendment's guarantee." *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018). Thus, the 10th Circuit found that only bearable arms are protected by the Second Amendment and nothing else.  That holding conflicts with this Circuit's opinion in *Ezell I* (at 704-06) which found firing ranges protected by the Second Amendment. As the 10th Circuit's opinion conflicts with circuit precedent, it must be ignored.  Additionally, *Cox* conflicts with *Jackson* which the State cites with approval. Thus, the State cannot rely on *Cox* for support.[7]

The other cases cited by the Defendant deal with criminals and criminal possession of suppressors (failure to register under the NFA or being a criminal in possession).  For instance, the defendant in *United States v. Villalobos*, No. 3:19-cr-00040-DCN, 2023 U.S. Dist. LEXIS 71074 (D. Idaho Apr. 21, 2023) was a felon, caught with an unregistered silencer.  That court felt bound by Ninth Circuit precedent holding suppressors "are not bearable arms" and "are not constitutionally protected."  *Id*. at \*26.  In *United States v. Saleem*, 2023 U.S. Dist. LEXIS 34566 (W.D.N.C. Mar. 1, 2023), that court held that "to receive Second Amendment protection, the instrument must be a bearable weapon for offense or defense."  *Id*. at \*22.  This is obviously a bad statement of law, as magazines are not bearable arms, ranges are not bearable arms, and the various conduct and accessories discussed herein are not bearable arms but receive protection from the Second Amendment.

---

[7] Plaintiffs are unable to reconcile Defendant's citation to *Saleem* which cites to *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517, 112 S. Ct. 2102, 2109 (1992) for the proposition that "Congress determined silencers are 'modern and lethal weapons' that are 'likely to be used for criminal purposes.'"  *Saleem* at \*28.  Silencers are either not "arms" or they are "arms."  Defendant does not get to have it both ways.

While the *Saleem* court appears to understand the strange dichotomy it relies on, it then states that "[a] firearm is effective as a weapon of self-defense without the use of a silencer, but the reverse is not true; a silencer serves no purpose without a firearm." Id. at *27.  But if one were to apply that statement to, say, a magazine, the same can be said.  And a magazine serves no purpose without a firearm.  Neither does a bullet or a cleaning kit.

Finally, *Miller v. Garland,* 2023 U.S. Dist. LEXIS 93105 (E.D. Va. May 26, 2023) does not deal with suppressors at all.  Instead, it deals with whether a "stabilizing brace" brace is protected by the Second Amendment. *Id* at *30. The *Miller* court's logic is an overly simplistic analysis which, should it find traction, would allow the government to ban anything and everything that are not literally firearms.  For example, a firearm can fire (once) without its detachable magazine and can fire without any type of sights (which cannot cause harm on their own, and are not useful independent of their attachment to a firearm). Ironically *Miller* entirely ignores the Supreme Court's decision in *U.S. v. Miller*, 307 U.S. 174, 181–82 (1939), which explained that "arms" also includes "ordinary military equipment," as shown in the court's reference to founding era statutes that required militia members to be armed not only with firearms but also other "proper accoutrements" such as "a good bayonet and iron ramrod … a cartridge box … a good knapsack and canteen," and "Belt, a Pouch with a Box therein to contain not less than Twenty-four Cartridges … a proper Quantity of Powder and Ball, two spare Flints, a Blanket and Knapsack."  If belts are protected by the Second Amendment, then so is a suppressor.

Conclusion

Suppressors are protected by the Second Amendment.  Defendant's Motion should be denied.

19

Respectfully submitted,

*/s/Stephen D. Stamboulieh*
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Alan.alexander.beck@gmail.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Stephen D. Stamboulieh, counsel for Plaintiff, hereby certify that on this day, I have caused to be filed the foregoing document or pleading with the District Court's ECF which sent a notice and a copy of the foregoing to all counsel of record.


Dated:  July 26th, 2023.


/s/ *Stephen D. Stamboulieh*
Stephen D. Stamboulieh