IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY MORSE and<br>THEODORE RAY BUCK, JR.,<br><br>   Plaintiffs,<br><br>v.<br><br>KWAME RAOUL et al.,<br><br>   Defendants. | No. 3:22-cv-02740-DWD |
| CARLIN ANDERSON and<br>DAVE CLARK,<br><br>   Plaintiffs,<br><br>v.<br><br>KWAME RAOUL et al.,<br><br>Defendants. | No. 3:23-cv-00728-DWD |

**REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

The Second Amendment was written to be understood by ordinary people. *District of Columbia v. Heller*, 554 U.S. 570, 576 (2008). And ordinary people, from 1791 all the way through to today, have no difficulty understanding what "Arms" are. They're weapons. *Id.* That's why every court to address the question has held silencers—which decidedly are not weapons—do not fall within the meaning of "Arms" in the Second Amendment. *See* ECF 68 at 5. Indeed, since defendants filed their motion, two more courts have joined those ranks. *See United States v. Cooperman*, No. 22-CR-146, 2023 WL 4762710, at *1-2 (N.D. Ill. July 26, 2023); *Cox v. United States*, No. CR11-00022RJB, 2023 WL 4203261, at *7 (D. Alaska June 27, 2023).

Plaintiffs, to their credit, do not seriously contend otherwise. *E.g.*, ECF 76 at 6 ("a

1

suppressor, by itself, is not capable of expelling a projectile"). To be sure, the *Morse* plaintiffs suggest Congress has the power to change the meaning of constitutional text by mere legislation. ECF 75 at 3 (silencers are "Arms" because of how Congress defines "firearms"). But long ago, Chief Justice Marshall rejected the notion "that the legislature may alter the constitution by an ordinary act." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). That puts an end to that argument.

The real dispute is whether silencers are protected by the plain text of the Second Amendment even though they are not literally "Arms." Everyone agrees there are *some* such objects. *E.g.*, ECF 68 at 10. The question is how to identify what they are. Defendants submit this reply to highlight the crux of the disagreement and offer a framework for decision.[1]

Two appellate cases provide helpful guideposts. *Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014), holds the Second Amendment covers ammunition. And although *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011), concerns activity, not objects, it too provides a useful benchmark. It holds the Second Amendment covers proficiency training at firing ranges. *Id.*

Both *Jackson* and *Ezell* found support for their holdings in the plain language of the Second Amendment's operative clause—"the right of the people to keep and bear Arms, shall not be infringed." The "central component" of this right is "individual self-defense." *Bruen*, 142 S. Ct. at 2133. The Ninth Circuit reasoned that "eliminating a person's ability to obtain or use ammunition could thereby make it impossible to use firearms for their core purpose" of self-defense. *Jackson*, 746 F.3d at 967. Thus, banning all ammunition would infringe the right of the people to keep and bear arms. *See* SAMUEL JOHNSON, DICTIONARY OF THE ENGLISH LANGUAGE

---

[1] Plaintiffs challenge the constitutionality of a decades-old state law. Second Amendment jurisprudence is rapidly evolving. The issues are novel and complex. And the parties' positions have been focused by briefing. These constitute exceptional circumstances justifying a reply pursuant to Local Rule 7.1(c).

2

(10th ed. 1792) ("infringe" means "to violate," "to destroy," "to hinder"). The Seventh Circuit's approach in *Ezell* confirms this understanding of the text. The Second Amendment "wouldn't mean much without the training and practice that make it effective." 651 F.3d at 704. Put another way, banning people from "acquir[ing] and maintain[ing] proficiency in the[ ] use" of firearms would infringe—that is, destroy or hinder—the right to keep and bear arms. *Id.* What's the point of owning a gun for self-defense if you don't have any bullets and don't know how to shoot it?

Applying this reasoning, it's easy to see why courts unanimously reject the argument that the text of the Second Amendment should be construed to extend to silencers. *See* ECF 68 at 11; *Cooperman*, 2023 WL 4762710, at *2. For starters, plaintiffs do not (and could not) allege the state's restriction on silencers has *destroyed* their ability to operate firearms. ECF 68 at 12. Yes, plaintiffs allege they would *prefer* to attach silencers to their weapons. *Id.* at 11-12. But a firearm without a silencer fires just fine—in contrast to a firearm without bullets, which doesn't fire at all. *See, e.g., United States v. Saleem*, No. 3:21-cr-00086-FDW-DSC, 2023 WL 2334417, at *10 (W.D.N.C. Mar. 2, 2023) ("The use of a silencer is in no way necessary to the effective use of a firearm—it certainly has benefits for the user, but unlike cleaning materials or bullets, a firearm can be used safely and effectively without a silencer."). Thus, plaintiffs cannot show their proposed conduct implicates the plain language of the Second Amendment—because they cannot show silencer prohibitions *infringe* their right to bear arms.

Nothing in *Heller* or *Bruen* hints at extending constitutional protection to every object that makes a firearm marginally more pleasant to operate. Certainly plaintiffs have not developed any such argument. True, the *Morse* plaintiffs argue *United States v. Miller*, 307 U.S. 174, 181-82 (1939), holds ordinary objects like blankets are protected by the Second Amendment because some colonial militias required their members to possess them. ECF 75 at 19. That unorthodox

reading does not appear to have been endorsed by any court, probably because *Miller* says nothing of the sort. To the contrary, *Heller* made clear that *Miller* "provide[s] no explanation of the content of the right" beyond simply holding "that the *type of weapon at issue* [a short-barreled shotgun] was not eligible for Second Amendment protection." 554 U.S. at 621-22.

In sum, silencers are not *necessary* to the use of "Arms" for self-defense. Thus, the constitutionally protected right is not infringed by their prohibition. It follows that silencers are not covered by the Second Amendment.[2]

Plaintiffs resist this standard but provide no reasoned alterative. The *Morse* plaintiffs cite *Wilson v. Cook County*, 937 F.3d 1028, 1032 (7th Cir. 2019), in support of their argument that the Second Amendment covers "accoutrements which *aid* in and *assist* in Second Amendment protected conduct." ECF 75 at 11 (emphasis added). But this portion of *Wilson* merely summarizes the reasoning of *Ezell*, which, as explained above, does not endorse plaintiffs' assertion. As for the *Anderson* plaintiffs, their argument reduces to the proposition that everything anyone wants to use in connection with a firearm deserves constitutional protection. ECF 76 at 6 (Second Amendment protects whatever "function[s] with the firearm"). "Anything goes" is not a principled approach to constitutional analysis. The standard defendants propose is grounded in text and history; the standards plaintiffs propose are not.

Plaintiffs believe silencers offer substantial benefits. ECF 75 at 12-15; ECF 76 at 8-12. Those opinions might appropriately be presented to the legislature, but they make no difference to the constitutional analysis because silencers are not *necessary* to the use of a firearm. In these circumstances, the judiciary's role is not to determine whether a law represents wise policy or is

---

[2] The key word is *necessary*—an object that is *necessary* to the use of "Arms" is protected by the Second Amendment. The *Anderson* plaintiffs' parade of horribles misses the mark. *See* ECF 76 at 6. If a firearm component is necessary to the use of "Arms," it's constitutionally protected; if it's not, it isn't.

socially optimal. *See Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1132 (7th Cir. 1995) ("Just as the Constitution does not enact Mr. Herbert Spencer's *Social Statics*, so it does not enact prescriptions from the pages of *The Journal of Law & Economics*—where, we may assume, an article will appear in due course adding this ordinance to the long list of laws whose costs exceed their benefits.").

One final point. The Seventh Circuit recently heard argument in consolidated appeals challenging the state's restrictions on assault weapons and large capacity magazines. One of the issues presented is whether large capacity magazines are protected by the Second Amendment even though they are not literally "Arms." *E.g.*, Opening Brief of the State Parties at 17-20, *Barnett v. Raoul*, No. 23-1825 (7th Cir. June 5, 2023), ECF 47 (arguing large capacity magazines are unprotected because they "are unnecessary to operate firearms").[3] If the appellate court issues its decision before the Court resolves the instant motion, defendants will be happy to provide a supplemental brief discussing how the decision offers guidance.

Dated: August 4, 2023                                              Respectfully submitted,

                                                                       /s/ Darren Kinkead
Darren Kinkead, ARDC No. 6304847
Office of the Attorney General
100 West Randolph Street
Chicago, IL 60601
(773) 590-6967
Darren.Kinkead@ilag.gov

---

[3] Thus, the state's position here is consistent with its position in *Barnett*—in both cases, the standard proposed is whether the object in question is *necessary* to the use of a firearm. *Contra* ECF 76 at 7. The state's position is also consistent with Justice Thomas's concurring view in *Luis v. United States*, cited approvingly by the *Anderson* plaintiffs, ECF 76 at 13, that constitutional rights "implicitly protect those *closely related* acts *necessary* to their exercise," 578 U.S. 5, 26-27 (2016) (emphasis added).